## PEYTON *v.* STEPHENS.

1. A distributee of an estate, who, in ignorance of his interest in the lands thereof, disclaims to the other distributees any interest therein, whereupon the latter divide such lands among themselves, is not thereby estopped from afterwards asserting against them title to his interest, where such other distributees had convenient means of acquiring knowledge of the title, and had equal knowledge, or equal means with such distributee of obtaining the truth about the title, and such distributee was not guilty of such negligence as misled the other distributees to their injury; nor does any estoppel, by reason of such disclaimer, arise in favor of a grantee of such distributees, where it does not appear that such grantee ever knew of such disclaimer.

2. Where, upon the trial of a case involving title to land, a party claiming adverse possession for seven years under color of title testifies that

he has been in possession of a part of the land for more than seven years, such testimony will not be construed to mean that he has been in possession seven years prior to the institution of the suit, which was brought nearly one year prior to such trial.

Submitted January 14,—Decided March 6, 1908.

Petition. Before Judge Kimsey. Habersham superior court. March 14, 1907.

*J. C. Edwards,* for plaintiff in error.

HOLDEN, J. The record presents the following case. Charley Landers died, leaving eight heirs entitled to receive his estate. Prior to a division of the lands belonging to the estate, a daughter of Landers, who was one of the eight heirs thus entitled, died leaving no children, and her share of the estate was inherited by her husband, Henry R. Schurter, as her sole heir. Schurter was requested to be present and look after a division of the lands belonging to the estate, and in reply wrote one of the heirs the following letter: "North Decatur, Ga., Oct. 8, 1894. Dear Brother Wash.: Sanford has informed me that you wish for me to come up to see about dividing the land, and I notice your kind letter reads like I had any part in the land. While I thank you very, very much for your kindness and kind attention, I feel it my duty to tell you that I have no part in the land whatever. Of course if the baby had lived it would have got its part lawfully, but as it is I have nothing to do with the land. Thanking you again for your kindness I close, with love to you and family. Your loving brother, Henry." The other heirs then proceeded to divide the lands belonging to the estate among themselves, leaving Schurter out of the division. The land involved in this case was conveyed by certain of the heirs to C. S. Landers, as an allotment to him, by deed dated November 5, 1895, and by this grantee to R. D. Stephens by deed dated July 22, 1899. Neither of these deeds was recorded. Henry R. Schurter, on July 3, 1901, conveyed his entire interest in the land belonging to the estate of Charley Landers to J. T. Peyton, the plaintiff in this case, which deed was recorded July 21, 1901. In March, 1905, Peyton made an application for partition of the land conveyed to Stephens by the deed above mentioned, which application was resisted by Stephens, and the issue thus made was tried at the March term, 1906, of Habersham superior court, resulting in a verdict in favor of the defendant. The plaintiff moved for a new trial, and to the judgment of

the court below overruling the motion he filed his bill of exceptions in this court.

1.   On the trial, the letter from Schurter, which is set out in the statement of facts, was introduced in evidence, and a witness testified that it had been exhibited to the plaintiff prior to his purchase of Schurter's interest in the land in dispute.   The plaintiff denied any knowledge of this letter.   We do not have to determine whether or not the plaintiff knew the contents of such letter prior to his purchase from Schurter, as that was an issue of fact on which the jury has passed.   But the contention of the defendant, that this letter was a disclaimer of title on the part of Schurter, upon which the heirs·acted to their injury, and constituted an estoppel as against Schurter and the defendant as his privy in title, makes it necessary for us to decide whether or not the contents of the letter in question, under the facts of this case, created in law an estoppel which would prevent the defendant from asserting any rights in the land in controversy under his deed from Schurter.   In the case of *Wilkins* v. *McGehee, 86 Ga. 764* (13 S. E. 84), a sale was made under a power of attorney contained in a mortgage, after the mortgagor's death, which revoked the power and rendered the sale void.   The mortgagor's executors, who were also trustees under her will, brought suit as such executors and trustees and as next friend of a minor beneficiary.   These executors were present at the sale, but did or said nothing in regard to the matter, and made no representation as to the title, or right of the mortgagee to sell.   The purchaser was the mortgagee's son and agent, who had advertised the land for sale and knew as much about the state of the title as the plaintiffs.   All parties acted in good faith and believed the power of sale was still valid when the sale occurred.   It was held that the executors were not estopped from recovering the land.   The court further said that any doubt about their ruling was removed by considering the difference between the estoppel of one acting as an individual and one acting in a representative capacity.   On pages 769-770, the court uses this language: "They were not guilty of any fraud; but, on the contrary, it was admitted in the argument here that all parties acted in perfect good faith under the belief that the power of sale was still valid when the sale took place.   It was an honest and mutual mistake of law.   .The purchaser was as much bound to know the

law as the plaintiffs. All of them being equally ignorant, it is now claimed in behalf of the purchaser that the plaintiffs became estopped by not informing him truly of the law. We know of no law requiring one who is present at a sale like this to act as the legal adviser of an adverse party, or else become forever estopped from attacking the validity of the sale." The Civil Code, §5151, declares: "Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel."

If the heirs of Charley Landers were influenced by Schurter's letter to one of them, were they ignorant of the true title? There is no evidence whatever that they were ignorant of the fact that Schurter had title to a one-eighth interest in the land, except the testimony of one heir, that when the land was divided he did not know that Henry Schurter had any interest therein. In the letter from Schurter he says that the letter to him from one of the heirs reads like he had an interest in the land. This would indicate that the heir who wrote the letter thought Schurter had an interest therein. Regardless of what this expression indicates, with the exception noted above, it does not appear that the heirs were ignorant of the true title, and does not appear that they did not have any convenient means of acquiring knowledge of the title; and the burden was on them to affirmatively establish these facts, before they could claim that the plaintiff was estopped because they were influenced by the acts or declaration of Schurter. The latter part of the code section above quoted provides, "Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel." It does not appear that the party to whom Schurter wrote and the other heirs did not have equal means of obtaining the truth about the title, and did not have equal knowledge, with the exception of one heir. In fact it would seem that the knowledge of the party writing the letter to Schurter was greater, as this party wrote as if Schurter had an interest in the land. This is what Schurter says in his reply, and, indeed, we see no motive for writing Schurter unless the writer thought Schurter had an interest in the land. The Civil Code, §5152, says: "In order

for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud by which another has been misled to his injury." There was certainly no intended deception on the part of Schurter. The very nature of the matter and the tone of his letter shows that he did not intend to deceive any one. He did deceive himself. It is apparent on the face of the letter written by him that he was under the mistaken idea that any rights which his wife might have had devolved on her child and died with it. Was there such gross negligence by Schurter as to amount to fraud by which another was misled to his injury? Was Schurter guilty of any gross negligence amounting to constructive fraud? Suppose he was, this fact alone would not estop him. In order to estop him, the party asserting the estoppel must have been misled by such negligence to his injury. As far as shown by the record, the remaining heirs were not injured, and if misled, they were misled to their benefit by taking Schurter's interest in the land. If deceived at all, they certainly were not misled to their injury when the deception resulted in their getting one more share of land to divide than they were entitled to and got that share from the party misleading them. See *Davis* v. *Bagley,* 40 *Ga.* 181 (2 Am. R. 570). There is no evidence whatever that the defendant Stephens, who purchased from one of the heirs the land in dispute, was misled or deceived. It does not appear that he ever knew Schurter did or did not have an interest in the land, or ever wrote a letter, or did or said anything in regard to the matter. Schurter did not acquiesce in or encourage the defendant to buy, or his vendors to sell to him. Under the facts disclosed in the record before us, we do not think that Schurter himself would be estopped from asserting title to a one-eighth interest in the land in controversy; and it follows that the plaintiff is likewise not estopped from claiming such interest as Schurter's grantee, the contention that the plaintiff is estopped being based solely on the grounds that he is the privy in title of Schurter and bought with notice of the letter written by Schurter in which he disclaimed having any interest in the land.

2. The lot of land in controversy was allotted to C. S. Landers in the division, and some of the other heirs made him a deed to this lot. One witness testified that he bought some timber from

C. S. Landers and cut and moved it from the premises, but there is no evidence that C. S. Landers was ever in possession of any part of this land. It was not shown that the defendant, who was Landers' grantee, was in possession of this lot, under color of title, more than seven years prior to the commencement of the suit. The defendant testified that he was in possession of the land for more than seven years; but this evidence means that he was in possession for more than seven years prior to the time he was testifying. This could be true, and yet it could also be true that he had not been in possession for more than seven years prior to the filing of the application for partition, as about one year had elapsed between the date the proceedings were instituted and the time he was testifying. Moreover, the deed from C. S. Landers to the defendant was dated July 22, 1899, and the application for partition was filed March 9, 1905. Hence the defendant could not have been in possession of any part of the land under this deed for seven years prior to the filing of such application.

We do not deal with the question of cotenancy, or any other question, as affecting adverse possession; as the evidence does not show any possession under color of title for seven years prior to the institution of this proceeding.

*Judgment reversed. All the Justices concur.*