*Leonard Farkas* and *Walter H. Burt,* for plaintiffs.
*E. L. Smith,* for defendants.

RANDOLPH *v.* MERCHANTS & MECHANICS BANKING
AND LOAN COMPANY *et al.*

No. 10936.   JANUARY 16, 1936.   REHEARING DENIED FEBRUARY 21, 1936.

*David A. Gershon,* for plaintiff in error.
*Kenneth A. Campbell,* contra.

HUTCHESON, Justice. It will be observed from the foregoing statement that the bank admits that Randolph has legal title to the strip of land in controversy, but contends that, by reason of representations made by Randolph to the tax-assessors and paving-assessors that his lot had a depth on Newport Street of only 110 feet, he is now estopped from asserting that he owns 120 feet. On the hearing there was evidence from certain city officials that Randolph did make these representations. This was denied by Randolph, who introduced tax-assessment records which showed that his lot had been assessed for several years by the city as containing 125 feet. On this point only there is a conflict in the evidence. These representations were made, as it is alleged, to the officials of the City of Atlanta, and not to the bank or to any one in privity with the bank; and under the decisions of this court, statements made in this way would not work an estoppel on the defendant as to the bank. "Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel." Code of 1933, § 38-115 (1910, § 5737). "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled

to his injury." § 38-116 (§ 5738). The deed held by Randolph was on record, and the bank thus had constructive notice of it, and we are not aware of any law which requires one to go to the tax-assessors' records for notice of title to land. In *Williams* v. *Smith,* 128 *Ga.* 306, 313 (57 S. E. 801), this court held: "For the purpose of giving constructive notice of deeds, the law makes provision for their record in the office of the clerk of the superior court of the county where the land lies. Civil Code, § 3618" (Code of 1933, § 29-401). It was agreed by both parties that Randolph's deed was properly recorded. In *Paylon* v. *Stephens,* 130 *Ga.* 338 (60 S. E. 563, 124 Am. St. R. 170), it was held that an express disclaimer through ignorance by one who had an interest in land would not estop him where the persons acting thereon had convenient means of acquiring knowledge of the title, and had equal knowledge, or equal means with the one disclaiming, of obtaining the truth about the title, and he was not guilty of such negligence as misled these persons to their injury. This court held, in *Harvey* v. *West,* 87 *Ga.* 553 (13 S. E. 693), that "Admissions against one's title to land and in favor of the title of a third person will be no estoppel in behalf of one to whom they were not made and who has merely heard of them, it not appearing that they were made for the purpose of being acted upon or with any design or intention that they should be acted upon." In *Parker* v. *Crosby,* 150 *Ga.* 1, 5 (102 S. E. 446), it was held: "If one acts on representations not made to him and not intended by the declarant for him, he will do so at his own risk. Such declarations do not operate as an estoppel against the declarant." See, to the same effect, *Beasley Motor Co.* v. *Cowart,* 41 *Ga. App.* 684 (154 S. E. 458). The only feature of the case on which there was conflicting evidence was on the question of estoppel; and the evidence was not such as could be relied on as an estoppel on the defendant from asserting his right to the strip of land in controversy.

It appears from the evidence that when the house was built, the then owner of the land was given actual notice that the defendant had title to the strip of land; and while there are two deeds on record, one a security deed, including this eight-foot strip of land, yet the plaintiff in error brought his suit in ejectment before the prescriptive period had elapsed, and there is no question

of prescription in the case. It further appears from the evidence that the bank made a loan to the plaintiff in error when he purchased his lot, and the plaintiff in error executed to the bank a security deed to the lot as of the dimensions 50 x 120 feet, and there has been no conveyance of his property since that date by the plaintiff in error. He filed his ejectment suit against Watson and served the papers on the bank; and the bank, while not actually a party to the suit in its finality, yet defended the suit through its own attorneys. The bank was actually made a defendant at one stage of the ejectment suit, but had itself dismissed as a party because the order making it a party was ex parte. So it appears that the bank had constructive notice of Randolph's title to the land, as well as actual notice, and that it participated in the defense of the ejectment suit in which Randolph prevailed; and the bank is bound by that judgment.

It is the contention of the bank that it will suffer irreparable damage if compelled to tear down the house which has been built on the land. In *Wachstein* v. *Christopher*, 128 *Ga.* 229 (57 S. E. 511, 11 L. R. A. (N. S.) 917, 119 Am. St. R. 381), this court held: "But it is said that when the sheriff attempts to deliver possession, he must do so by removing the foundation, and this will imperil if not destroy the building which it supports. In other words, the argument is that because the wrong-doer may sustain damage; and serious damage as the result of the reparation which the law gives to the one wronged, the latter must submit to the consequences of the wrongful act. One who ousts another from the possession of his property must take all the consequences resulting from the application of the appropriate remedy given by the law to restore to the owner that of which he has been deprived." In that case a party had built the foundations of his house on the land of his neighbor. It was further said in the opinion, quoting from Warvelle on Ejectment: "In no event should a landowner be obliged to submit to invasion or compelled to part with his property, or any portion thereof, upon the mere payment of damages by a trespasser." In the present case the bank asks a court of equity to value the property and to permit the bank to pay its fair market value. We know of no rule of law which permits a court of equity to take the property of another and value it, and allow a trespasser to pay such amount as the

court may fix as damages to one he has injured by erecting a building on his property. Under the pleadings and the evidence the judge erred in granting an injunction.

*Judgment reversed. All the Justices concur.*