## Wilhoit's Administratrix v. Richardson.

(Decided October 25, 1921.)

### Appeal from Boyd Circuit Court.

1. Champerty and Maintenance—Champertous Contracts in General. —A contract by which a person not directly interested in the litigation undertakes to assist in the preparation of the case in consideration of receiving for his services the sum of 25% of the amount recovered is champertous and void.
2. Champerty and Maintenance—Interest in Action as Administrator. —One whose only interest in the litigation is as administrator of an estate does not have that interest in the action, and is not "a party on record in said suit" within the meaning of our statute, section 209.

H. R. DYSARD for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

In 1911, J. B. Wilhoit, an attorney of Ashland, was employed by one or more of the heirs of Robert Callihan, deceased, to institute an action in behalf of said heirs against the board of education of the Methodist Episcopal Church to defeat a trust, which was created by the will of said Callihan, and to recover the property and funds which were then held by the board of trustees of the church under the trust. After the action was duly instituted Otho Callihan, the prime mover in the litigation, being one of the heirs, died, and appellee, Dr. J. L. Richardson, was appointed and qualified as his administrator. The action was then revived in the name of the administrator of Otho Callihan. Little or nothing was done in the preparation of the case for more than a year after the qualification of Dr. Richardson as administrator of the estate of Otho Callihan. In June, 1913, Dr. Richardson and J. B. Wilhoit, the attorney for the heirs, entered into the following written contract:

"Whereas, J. B. Wilhoit has a contract with the Callihan heirs who now have a suit pending in the Boyd circuit court against the board of education of the Methodist Episcopal Church for a sum of money equivalent to one-half of the amount recovered.

"And, whereas, Dr. J. L. Richardson is administrator of Otho Callihan, deceased; it is therefore agreed by and between J. B. Wilhoit and said J. L. Richardson that the said J. L. Richardson is to receive for his services in full the sum of 25 per cent of the amount recovered or one-half of the amount received by said Wilhoit.

"Witness our hands this 4th day of June, 1913.

"J. B. WILHOIT,
J. L. RICHARDSON."

This contract is the basis of the present litigation. After its execution Dr. Richardson and Attorney Wilhoit set about to prepare the case against the board of education, and before it had proceeded far a compromise was effected whereby the board of education agreed to and did pay the heirs of Callihan the sum of $9,000.00. As Wilhoit had a contract with the heirs for an attorney fee equal to 50% of the amount recovered, his fee under the compromise was $4,500.00. By the contract noted above Dr. Richardson was to have, and is now claiming, one-half of said fee, $2,250.00, less certain credits, including a payment of $250.00 made by Wilhoit to him. After the compromise was effected and the fee collected by Wilhoit he died and his wife Mrs. Maggie Wilhoit qualifed as his administratrix and is now the appellant in this case.

To the petition of Dr. Richardson, which declared upon the contract quoted, the defendant, now appellant, filed a general demurrer, which the trial court after consideration overruled. The administratrix of Wilhoit then filed an answer by which she traversed the material averments of the petition. By the second paragraph it was averred that "the contract relied upon by the plaintiff was against public policy, is champertous and violates the law against champerty and maintenance and is otherwise vicious and void."

The third paragraph of the answer affirmatively alleged that Dr. Richardson, as administrator of Otho Callihan, had no right to receive any compensation except that fixed by law for the performance of his duties.

A general demurrer was sustained to both the second and third paragraphs of the answer.

Proof being taken and the cause submitted to the court, judgment was entered in favor of Dr. Richardson for $1,530.42. Being dissatisfied with this judgment, the administratrix of Wilhoit appeals to this court.

She insists that the judgment should be reversed:

(1) Because the contract declared upon was champertous and against public policy.

(2) It is against the public policy of the state to permit an administrator or other fiduciary to contract, on the side, for and receive a greater fee than that fixed by law.

(3) The judgment is not supported by sufficient competent evidence, it being against the estate of a deceased person, was not proven by the evidence of any witness except that of the plaintiff, which was incompetent, under section 606 of the Civil Code.

At common law champerty is defined to be a bargain by the terms of which a person, having otherwise no interest in the subject matter of an action, undertakes to carry on the suit at his own expense, or to aid in so doing, in consideration of receiving in the event of success some part of the land, property or money recovered or of deriving some benefit therefrom. In the case of Brown v. Beauchamp, 5 B. Monroe 416, we defined champerty as "the unlawful maintenance of a suit, in consideration of some bargain to have part of the thing in dispute or some profit out of it; every champerty is maintenance, but every maintenance is not champerty, for champerty is but a species of maintenance." We now have a statute which reads:

"All contracts, agreements and conveyances made in consideration of the services to be rendered in the prosecution or defense, or the aiding in the prosecution or defense, in or out of court, of any suit, by any person not a party on record in such suit, whereby the thing sued for or in controversy, or any part thereof, is to be taken, paid or received by such person for his services or assistance, shall be null and void."

It will thus be seen that every champertous contract by the common law and by our statute is void. If, therefore, the contract under consideration contravenes the statute quoted or is contrary to the common law it is unenforcible. Appellant administratrix insists that the

contract is champertous because Dr. Richardson had no interest in his individual capacity in the litigation between the Callihan heirs and the board of education; that his only interest was in his representative capacity as administrator of Otho Callihan. In response to this assertion, appellee in his brief, after quoting the statute, section 209, says:

"That if the contract is made in consideration of the services to be performed by any person, *not a party on record in such suit,* then the contract shall be null and void. The converse of the statute then would be if the contract was made *by a party on record in such suit,* then it would be valid.

"In the instant case Dr. Richardson, at the time he and Wilhoit entered into the contract, *was a party on record in the suit.* It is true he was a party, as administrator for Otho Callihan, but he was, nevertheless, a party to the suit on record. He was directly interested in the suit at the time and before the contract was entered into, in a way and manner, separate and apart from what he would get under his contract with Wilhoit. He was first interested as a party on record, in the commissions he would receive from the handling of the estate of Otho Callihan, deceased. He was further interested, as the administrator of Otho Callihan, in procuring, preserving and turning over to those entitled thereto all the property belonging to Otho Callihan, deceased. So that Dr. Richardson's interest was twofold in the outcome of said suit, and we think it will not be held that he was not a party on record in said suit within the meaning of the said section of the statute.

"Let us test the contract by the statute to which we have referred and determine whether the contract violates the public policy of the state of which the statute is a part. For an easy understanding of the statute let us eliminate all but that part which directly relates to contracts of this nature, making it read: "All contracts, . . . made in consideration of the services to be rendered in . . . any suit, by any person not a party on record in such suit, whereby the thing sued for . . . is to be . . . received by such person for his services or assistance, shall be null and void."

As this is a contract whereby Dr. Richardson undertook to render services in the prosecution of a suit in consideration of receiving 25 per cent of the thing sued

for, the contract is void as against public policy, unless he *was a party on record in such suit,* as provided by the statutes. Such a contract is not void if made by a person *a party on record in such suit.*

A statement of the reasons which originated and now sustain the law of champerty will aid us in determining the question as to whether Dr. Richardson in his representative capacity as administrator of the estate of Otho Callihan was *a party on record in such suit* within the meaning of the statutes, section 209. Originally the doctrine was established, as said in 5 R. C. L., page 272, "to repress the practices of many who, when they thought they had title or right to any land, for the furtherance of their pretended right, conveyed their interest or some part thereof to great persons, and thereby oppressed the possessors. The power of great men, to whom rights of action were transferred in order to obtain support and favor in suits brought to assert these rights, the confederacies which were thus formed, and the oppression which followed from the influence of great men in such cases, are themes of complaint in the early books of the English law. It became necessary at an early day in England to enact statutes to prevent such practices, and to invoke in all its rigor the doctrine against champerty and maintenance." Champerty is iniquitous because it tends to stir up and foment litigation and bring on strife. Officious individuals interfering in others' quarrels and aiding in litigation where they had no interest, save such as they expected by a shadowy contract to obtain out of the results of the litigation, forced the enactment of statues against champerty. Any contract which in its nature tends to increase litigation, multiply contentions or unsettle the peace and quiet of a community or set one neighbor against another or give one litigant an advantage over another or induce witnesses or parties to resort to perjury or subornation of perjury or to the commission of any other crime or offense against the laws of the Commonwealth is champertous and void and is therefore against public policy.

Returning to the question, was Dr. Richardson "a *party on record in such suit*" so as to entitle him to make the contract under consideration, it must be patent in the light of the reasons which support the doctrine that he did not have that personal interest either by relationship to the parties or by direct mercenary investment

which would purge him of the odium of the charge of champerty in the execution of the contract, for he acted merely and alone in his representative capacity as administrator of Otho Callihan, one of the deceased heirs of the testator in the prosecution of the suit, but only as an individual, a different capacity in making the assailed contract. By the expression, "*a party on record in such suit,*" the statute means the real party in interest, one having a personal and true interest in the subject of the litigation and does not include one whose name may appear as "*a party on record in the suit*" only in a representative capacity. To otherwise construe the statute would open the door to all the vices against which the statute was enacted and the common law had its origin to prevent. Dr. Richardson in his individual capacity had no more interest in the litigation between the heirs of Callihan and the board of education at the time of the making of the questioned contract than had any other individual not related to the family. As administrator of the estate of Otho Callihan Dr. Richardson acted in a purely representative capacity and could do things in that capacity as personal representative of his decedent which he was utterly without right or authority to do in his individual capacity. The contract between Dr. Richardson and Mr. Wilhoit was entered into by Richardson in his individual capacity and not in his capacity as administrator. In other words, Dr. Richardson was an entirely different person from the personal representative of Otho Callihan. Dr. Richardson had the power to and was acting in a dual capacity; (a) Dr. Richardson indivudual and (b) Dr. Richardson administrator. The law so separates and regards him. The activities of the one were entirely outside of and separate and apart from the activities of the other personally. Had he entered into the contract in a representative capacity, the capacity in which he had an interest in the litigation, and was "*a party on record in the suit,*" the contract would not have been champertous but would have been enforcible. But having entered into the contract as an individual whereby he was to receive for services rendered in the prosecution of the suit in which he was not a proper or interested party and not *a party on record in the suit,* within the meaning of the statute, he undertook to do the things against which the statute

is leveled, and his contract was void and cannot now be enforced.

We had before us in the case of Lyon v. Moss, reported in 139 Ky., page 637, a case the facts of which are analogous to those under consideration. In that case Lyons, a layman, entered into a contract with Moss whereby he was to procure Moss to be employed as attorney of persons who were interested in an estate which had been disposed of by will contrary to the wishes of such persons, to bring an action to contest the will. Lyons, the layman, alleged that he was to perform certain services, such as looking up witnesses, going errands and attending in general to the litigation, and by the contract was to have one-half the fee which the lawyer should receive for his services. The will was rejected and Lyons and his associates recovered a large sum of money, one-third of which, by contract, was to go to the attorney. Lyons claimed one-half of the fee and the attorney failing to pay it over, Lyons brought suit for his part of the fee. In disposing of the case we said:

"Appellant, without pretense of relationship or of original interest in the controversy, undertakes the prosecution of the appeal, and to furnish such evidence as he could learn of, for a stipulated consideration, in fact, in every essential for a part of the thing to be put in controversy by the suit. The act and contract clearly constituted what would have been maintenance, and perhaps champerty, at the common law. It is earnestly argued here for appellant, however, that the common law relating to maintenance wherein it is not incorporated in our statute has ceased to exist in Kentucky. We are cited opinions of some courts, where it has been held, that owing to their long disuse, and the great change of conditions since the time when it was found necessary to apply the harsh doctrines of the law against maintenance, the acts then denounced are no longer illegal as such, is said to be the trend of the decisions in the states in modern times. Even were we inclined to follow sister jurisdictions in this departure, we must first find at least the same reasons they urge for doing so.

"For notwithstanding our statute on the subject of champerty and maintenance and now in force (sec. 209 Ky. Statutes) and which was first enacted in its present form about 1854, we have recently held that the ancient

rule of common law against maintenance was yet in force in Kentucky, and so applied it. We refer to the case of Lucas v. Allen, 80 Ky. 682.''

Furthermore, it may be said that a regularly licensed practicing attorney whose authority to make such contracts is much greater than one not a member of the profession, could not have made the contract which Dr. Richardson is attempting to enforce for we have repeatedly held that a contract between an attorney and his client whereby the attorney for a certain named per cent of the amount recovered undertakes to represent his client, the contract is champertous and void. Husbands v. Cook, 71 S. W. 508, 24 R. 1322. But an attorney may, as indicated in the contract declared upon, contract with his client for a sum equal to a given per cent of the amount recovered or the value of the thing recovered. Raymone v. McCleery, 15 R. 269; Wilhoit v. Roberts, 4th Dana 173; Ramsey v. Trent, 10th B. Monroe 341. In other words, an attorney can not contract to take and receive for his fee a part of the thing or fund for which the suit is instituted, for such a contract is champertous, but he may enter into a contract with his client to take and receive for his services a sum equal to a given per cent of the amount recovered, which fee, presumedly, is to be paid out of a fund independent of and distinct from the thing in litigation or the funds sought to be recovered.

From what has been said it is apparent that the petition did not state a cause of action and the general demurrer thereto should have been sustained. This conclusion renders it unnecessary for the court to consider the other grounds relied upon by appellant for reversal of the judgment.

Judgment reversed for proceedings consistent with this opinion.