## Fordson Coal Co. v. Garrard et al.

Jan. 31, 1939.

W. E. BEGLEY, Judge.

CLEON K. CALVERT for appellant.

JOUETT & METCALF for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This suit was instituted by the Fordson Coal Company against E. G. Garrard and the heirs and representatives of his deceased brother, W. T. Garrard, to enjoin the cutting and removal of timber upon a large body of land in Clay County which the plaintiff and the defendants owned jointly. The answer claimed the defendants owned all the white oak, poplar, cucumber, ash and black walnut of certain dimensions. It was admitted that the plaintiffs and the defendants each owned an

undivided one-half interest in the land and the timber thereon except that just described. The defendants set up as the source of their title a deed to E. G. Garrard and W. T. Garrard of date November 27, 1914, from the Kentucky River Timber & Coal Company, predecessors in title of the plaintiff. The deed recites that for the consideration of $3000 the grantor conveyed all of that particularly described timber and a one-half interest in the land and the other timber thereon. It was averred that the defendants intended only to cut and remove the trees to which they had the entire title. The reply and rejoinder raised the issues in the case, which are stated in their disposition. The judgment decrees the plaintiff not to be the owner of or entitled to any of the timber particularly described, and denies plaintiff any relief. It appeals and maintains the chancellor should have adjudged otherwise.

Without undertaking to reform the deed to the Garrards, the plaintiff sought to show the intentions were to make and to accept conveyance of only an undivided one-half interest in the land and the timber thereon, and that the stated conveyance of the entire property in the particularly described trees was as to one-half thereof without consideration; that the conveyance of such one-half was for the use and benefit of the grantor for the purposes stated, and those only, so that as to such half interest the defendants held title in trust for the grantor and the plaintiff as its successor. The reason and purpose for this were thus stated: The grantor's title to some tracts in the body of land was good; to some questionable; and to some defective. The Mowbray & Robinson Company owned all the capital stock of the Kentucky River Timber & Coal Company, a New Jersey corporation. The officers and management of the two corporations were the same. The Mowbray & Robinson Company was a manufacturer of lumber and timber products. It wanted the trees on this body of land for manufacture. Realizing that litigation would follow when it should undertake to cut and remove them through and under a contract which might be made with the Timber & Coal Company, it was deemed well to place title to those trees in the Garrards, who were local citizens of influence, so that the suits would be against them. This would also confine the litigation to the state courts and prevent transfer to the federal courts. As we understand the plaintiff's claim, there was an ac-

tual bona fide sale to the Garrards for $3000' of a half interest in what is called the "Keen or Murphy tract," which is included in the body of the land, and that there was an undisclosed agreement to give the Garrards a half interest in all the remaining land and in the timber in consideration that they prosecute and defend all litigation as the sole owners of the larger and better timber. It was this only that was to be cut by the Mowbray & Robinson Company. Though the appellant does not state it so baldly, the present contention is that the conveyance of the half interest in this merchantable timber was merely to deceive and, the deception having been accomplished, the appellees do not now own and never did own more than a half interest, which interest was given them for their participation in the deception and for pulling the appellant's "chestnuts out of the fire." These contentions as to the conveyance of only half of the described timber the defendants deny, and maintain the truth of the recitation of the deed showing they acquired the entire title thereto. But, as we understand, they admit that part of the consideration was that the grantees should become necessary parties and look after the prospective litigation.

While the consideration stated in an instrument may be questioned and the real consideration or the absence thereof shown without seeking a reformation (Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955), it would seem to be a doubtful proposition that the terms of the instrument describing what the consideration—real or unreal—purchased, or what was the prima facie property conveyed for the consideration, may be modified without following the rules of equity demanded for a reformation of an instrument. The question was raised by the appellees. But the practice of the case continued as if the right to modify the conveyance in that respect existed without reformation, and the case was tried on its merits. In any event we think that the evidence to support such a claim and pleading as here made should be clear and convincing.

On November 27, 1914, the same date as the deed, the Garrards did contract with the Mowbray & Robinson Company to sell and deliver to it all the merchantable timber on the body of land. Not only the trees particularly described in the deed, but all others as well were included. About two years later an identical contract was executed by the Garrards to E. O. Robinson, who

was the president and principal owner of the Mowbray & Robinson Company. This contract, however, was dated back as of November 27, 1914, and was apparently substituted for that then made with the Company.

In 1918, in a suit in Clark County between the Mowbray & Robinson Company and the Garrards arising out of this logging contract, E. G. Garrard and W. T. Garrard gave their depositions which tend to support the contentions of the plaintiff in respect to the real facts. These depositions were introduced in the case at bar to prove those contentions. It was also shown that through the years the defendants had paid only one-half the taxes and the Kentucky River Timber & Coal Company, the Fordson Coal Company, and the intermediate owner, had paid the other half. The point is made that if the Garrards had in fact owned all the most valuable timber this was an unequal division of the taxes. The defendants explain this by proving that since the Garrards were residents of the county, and afterwards of nearby Barbourville, and were looking after the interest of the other joint owner, and because of the difficulty of equally apportioning the taxes, the other joint owners had, respectively, agreed to pay this disproportionate share of the taxes for their services.

Suit had been prosecuted against the Garrards and the Kentucky River Timber & Coal Company by John R. Boreing and others involving title to a portion of the land. It was decided against Boreing. Boreing v. Garrard, 210 Ky. 135, 275 S. W. 374. The company had borne one-half the attorneys' fees; but this seems to have been under a specific written contract which had been made on the same day the deed and the logging contract were executed, that is, on November 27, 1914. That instrument recites the agreement that the Garrards should employ their own attorneys and surveyors, who should control any litigation, and that the regularly employed, salaried attorneys and surveyors of the company should render reasonable and necessary assistance in respect to such litigation, but the Garrards should pay all their expenses.

The testimony of E. G. Garrard in this case supports the defendants' contentions in respect to the reality of their title to the whole of the timber described. He explains what appears to be inconsistent testimony given by himself and his brother in the Clark County

case. Though perhaps some of those explanations may be regarded as labored and not clear, still if that testimony be construed as strongly against the appellees as the appellant construes it, after all it is but contradictory of Mr. Garrard's emphatic testimony in the case at bar and other substantial evidence. There is much documentary evidence tending to support the defendants. Thus Boreing first filed suit in the Federal court claiming title to a portion of the land and timber in November, 1916. At that time Peabody, trustee for a syndicate, was negotiating for the purchase of the land and the Mowbray & Robinson Company's logging contract. When his attorney's attention was called to the filing of the suit, in answer to their inquiry the Mowbray & Robinson Company wrote that half the land and all of the timber on certain portions of the land had been conveyed to the Garrards for $3000. E. O. Robinson also wrote them that he had sold all of his interests except the logging contract for the timber which he had purchased from and held under his contract with the Garrards. The suit in the Federal court was dismissed but later re-filed in the State court, with the result above stated. In that suit the Garrards claimed title according to the terms of their deed. The Kentucky River Timber & Coal Company's position in the suit was the same. The Garrards made the same claim in the Clark County suit, and when it was dismissed settled, the depositions and exhibits were withdrawn from the court records by a consent order. This, we are told, was to prevent Boreing from getting possession of them for use in his suit then being prosecuted. It does not appear that the appellant or either of its predecessors ever made a claim to one-half the timber until after the Boreing suit was finally decided in favor of the Garrards and the Kentucky River Timber & Coal Company in 1925. Even after that, there is evidence showing that the plaintiff and its predecessors, through their managing officers or representatives, stated and recognized the title of the Garrards.

This suit was filed in 1935. The Fordson Coal Company, appellant herein, acquired its title while the Boreing suit was pending. It purchased the land from Peabody in March, 1923, and its deed expressly excluded the land and timber covered by the conveyance to the Garrards and as described in the deed to them from the Kentucky River Timber & Coal Company. On

March 8, 1917, that company had made another deed to the Garrards correcting a mistake in the first one, which likewise conveyed the entire interest in these trees. When that company, in April, 1918, conveyed its property to Peabody, trustee, it excepted from the conveyance the land and trees conveyed to the Garrards on November 27, 1914, and March 8, 1917. Thus the appellant's record title excluded everything the Garrards claim in this suit.

Of course, all of these documentary and other representations of the appellant's predecessor are consistent with the claim of a secret or hidden agreement with the Garrards. The record suggests the old adage of McGuffey's Reader:

"The truth itself is not believed,
From one who often has deceived."

Or perhaps of closer application the proverb:

"O, what a tangled web we weave,
When first we practice to deceive."

It seems to us that the appellant, as plaintiff, failed in its proof in respect to what it claimed was actually conveyed or intended to be conveyed to the Garrards.

The appellant plead estoppel against the appellees. The claim is rested entirely upon the ground that the attorneys for the Fordson Coal Company in investigating the title to the property for the purpose of purchasing it from Peabody, trustee, read the Garrard depositions given in the Clark County case. But it does not appear that the appellant relied upon the statements contained therein, which were, at most, but contradictions of the record title. Mr. Middleton, chief counsel for the Company, admits that when he made inquiry of Mr. Garrard about that testimony the latter stated to him that he was claiming title according to the terms of his deed. As we construe Mr. Middleton's evidence, he submitted an abstract of title to the officers of his company, which abstract, of course, disclosed all the records. He testified that he stated to those officers the circumstances that had come to his attention, which we understand has reference to this apparent conflict which might possibly result to the Company as the purchaser acquiring title to all the timber. There was no recommendation on his part as to whether they should buy or refuse to buy the tract. In considering a plea of estoppel, two things must be clearly established: (1) An

act by one party that would estop him; and (2) the other party has been misled by it. This, of course, imports his innocence of the true situation or real facts. If the testimony in the Clark County case be regarded as such an act on the part of the Garrards, the other party, that is, the appellant, was not misled by it. Hodge Tobacco Company v. Sexton, 166 Ky. 219, 223, 179 S. W. 36, 38; Torbitt & Castleman v. Middlesboro Grocery Co., 147 Ky. 343, 144 S. W. 16; Nussbaum v. General Accident Fire & Life Assur. Corp., 238 Ky. 348, 38 S. W. (2d) 1; Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26, 30.

Nor do we find merit in the argument that the description of the trees is so uncertain that they cannot now be identified, hence that the conveyance must fail on that account. The trees were not branded but they are described as being of certain kinds and certain dimensions. The argument is that those were the dimensions in 1914 and they have changed after a growth of more than twenty years, so that they cannot now be picked out of the forest. As an expert timber man of many years' experience, Mr. Garrard testified (and there is no contradiction) as to the average annual growth of each kind of tree and that there is no difficulty encountered in the identification of the trees described in the deed. Thus a white oak tree which measured 72 inches in circumference in November, 1914, now measures 78 inches. Indeed, those dimensions and others of the various kinds of trees at this time were agreed upon in a stipulation providing for the logging of the timber involved while the parties litigated over the proceeds.

Finally, we look to the plea and argument that as the consideration for the deed was that the Garrards should defend litigation of the Kentucky River Timber & Coal Company, the conveyance was champertous and maintenous, hence void. As has been said, the grantees bought and paid $3000 for a half interest in the Keen or Murphy tract and received the other property for the agreement and undertaking stated. In the case of Brown v. Beauchamp, 21 Ky. 413, 5 T. B. Mon. 413, 416, 17 Am. Dec. 81, the court defined champerty as the unlawful maintenance of a suit in consideration of some bargain to have part in the thing in dispute or some profit out of it; and stated that every champerty is maintenance but every maintenance is not champerty,

for champerty is but a species of maintenance. At common law champerty is defined to be a bargain by the terms of which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense or to aid in so doing in consideration of receiving, in the event of success, some part of the land, property or money recovered or deriving some benefit therefrom. Wilhoit's Adm'x v. Richardson, 193 Ky. 559, 236 S. W. 1025. We now have a statute, Section 209, which reads:

"All contracts, agreements, and conveyances made in consideration of the services to be rendered in the prosecution or defense, or the aiding in the prosecution or defense, in or out of court, of any suit, by any person not a party on record in such suit, whereby the thing sued for or in controversy, or any part thereof, is to be taken, paid or received by such person for his services or assistance, shall be null and void."

Brown v. Beauchamp, supra, states the early common law principles whereby maintenance is divided into two classes, which are thus defined:

"Maintenance signifies, an unlawful taking in hand, or upholding of quarrels, or sides, to the disturbance or hindrance of common right. It is divided into two classes. First: Ruralis, or in the country, as where one assists another in his pretensions to certain lands, or stirs up quarrels and suits in the country, in relation to matters wherein he is in no way concerned. Secondly: Curialis, or in a court of justice, as where one officiously intermeddles in a suit depending in any such court, which no way belongs to him, by assisting either party with money, or otherwise, in the prosecution or defence of any such suit."

Concerning the first class, however, modern authority "has introduced the idea that maintenance is not committed unless something is done which tends to obstruct the course of justice, or is against good policy in tending to promote unnecessary litigation, and is performed under a bad motive." 10 Am. Jur. 549. There does not appear in this case the vice of a champertous or maintenous contract, which from an early period has been regarded so iniquitous as to render a contract void, namely, the tendency or purpose to stir up and fo-

ment litigation, multiply contentions, or unsettle the peace and quiet of a community, or set one neighbor against another, or give one litigant advantage over another. Wilhoit's Adm'x v. Richardson, supra. We think it apparent that the contract is not embraced either in the common law or the statutory condemnation. The Garrards did not undertake to stir up trouble. It was to everybody's interest to keep it down. If trouble did appear they were to and did take care of it. Their compensation was not dependent in any way upon the success of prospective suits. They were not to have a part of the fruits of such litigation. They merely agreed that if suits should arise they would defend them and render necessary services in respect thereto in all events. They would defend not only their own title but that also of the other joint owner of part of the property. If there were no suits and no controversy, the consideration which had been already paid remained the same.

Accordingly, the judgment is affirmed.