## Combs et al. v. Salyer.

Oct. 2, 1942.

594

D. G. Boleyn for appellants.

Jesse Morgan for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

In April, 1928, the Perry County State Bank and the Hazard Bank and Trust Company consolidated under the name of Perry Bank and Trust Company, and functioned as such until November 15, 1928, when taken over for liquidation by the then Banking Commissioner. Coming into his hands was a $2,000 renewal note which had been originally executed to the Perry County State Bank by Mr. Combs and his wife, on June 11, 1927; of even date the makers had executed a mortgage on a tract of land in Perry County to secure the payment or renewal of the note.

The note was renewed to the consolidated bank on June 12, 1928. The process of liquidation was tardy, and on March 28, 1938, Cisco, bank agent, under court orders sold all the assets of the consolidated bank to Salyer. Among them was the note above mentioned, and upon which he later filed suit seeking judgment, and for a sale of the tract of land.

The defendants admitted the execution of the note, but plead that after the note was executed to the Perry Bank and Trust Company, and before it was placed in the hands of the commissioner, and before the note was due, the holder for value, negotiated the note in due course, so that thereby the note was placed on the footing of a bill of exchange, and that since five years had elapsed between due date and institution of suit, action was barred. Mrs. Combs alleges that she signed the husband's note as surety, receiving no part of the proceeds of the note, hence she was not personally bound.

As further defense she plead that at the time the note was sued on, she was and is now the owner of the mortgaged real estate; that when the note became due (December, 1928) her property was subject to the claim of plaintiff, but before it became due the payee bank turned it over to the agent, who knew the people of the county and parties; that it was his duty to reduce the note to cash for the benefit of the creditors, but the agent stood by without undertaking to collect and saw her property gradually decline in value.

She also pleads that the agent treated the note as uncollectible along with thousands of dollars worth of notes, which with other properties were sold in 1938 to plaintiff. She repeats that although she could have paid the note at maturity, and had some $5,000 left, it would now take all her property to pay the note and interest. She charges that by reason of Cisco's neglect the plaintiff should be estopped to lay claim, since he took the note after maturity with knowledge of said facts, as did his assignee.

She further alleged that at the due date of the note, or soon thereafter, Mr. Combs was placed in involuntary bankruptcy, and the agent took no steps to collect the claim in the bankruptcy proceeding, and she was led to believe that the note was settled in one way or another. Further, that after the suit was instituted by Salyer, and the controversy arose between them, "although contending that her property was not liable on said note," she made an agreement by which she was to pay him $500 in full settlement; that after he had agreed, B. W. Baker, an attorney, learning that she was about to settle, in order to stir up litigation entered into a champertous agreement with Salyer whereby he purchased the note for $500, and had the note assigned to his brother Prentiss Baker, and agreed that the action was to continue in the name of Salyer, and the brothers would stand the cost for further prosecution, accepting for services all over the amount paid to Salyer.

All these allegations were denied in reply, thus apparently joining issues. Upon submission the chancellor adjudged plaintiff the relief sought, and directed the sale of so much of the land as would meet payment of the obligation. The land was appraised at $3,000, and at the sale Prentiss Baker bid the appraised value and deed was executed, following conformation of the report of sale, to which the defendants had filed exceptions:

(a) Because the person making the sale was and is not the master commissioner of the court, since he was appointed more than four years prior to the date of sale, and at time of sale another regular judge of the Perry circuit court had never appointed him as commissioner. (b) The judgment of the court is erroneous "inasmuch as defendant appeared at said sale and publicly notified the bidders and the purchaser of said property of the invalidity of the judgment and her intention to appeal."

(c) Because "she, as the defendant in the action, bid the sum of $500, with interest and cost as set out in the petition, which amount was all that she owed or agreed to pay on said property, and which the plaintiff had agreed to accept." (d) Because the judgment was brought about by fraud, in that she and one of plaintiff's attorneys had agreed to compromise at $500; that she paid him $62.50 for his services in negotiating the settlement, and he, with plaintiff, in violation of her rights took advantage of the services for which she had paid him, and plaintiff caused a transfer of the property to be made to Prentiss Baker, brother of the attorney. (e) The purchaser caused the property to be appraised at $3,000, when it was worth only $2,000.

It may be noted, if it affects the case, that the commissioner in a supplemental report said:

"The plaintiff offered the best and only bid upon the property for $3,000, being the appraised value; the master commissioner thereupon asked if any one present would take a less amount of the land than the whole and pay the debt, and no one responding to this offer plaintiff was declared the successful bidder."

All exceptions were overruled.

As argued in brief for appellant, the three chief grounds for reversal are: (1) The court erroneously overruled exceptions to the commissioner's report. (2) Because of the bankruptcy proceedings the Perry circuit court had no jurisdiction of the subject matter. (3) Because the collection of the note was barred by limitation and by laches on the part of the liquidating agent and the assignee.

There are no records showing the involuntary bankruptcy proceedings, and the proof as to whether this note was before the bankruptcy court is vague. The note was executed on June 12, 1928, and due in six months. It went into the hands of the banking commissioner on November 15, 1928. On October 24, 1928, it was attached as collateral to the consolidated bank's note of more than $40,000. This note was paid by the Perry Bank and Trust Company and all collateral was returned by the pledgee on or about May 16, 1929. Cisco apparently did not testify as to this $2,000 note going into the bank-

ruptcy proceeding, although he had notice of the proceeding.

W. E. Faulkner served as referee from 1931 or 32 until 1936. When he took office he found the Combs' bankruptcy proceeding, which was still pending when he turned the office over to a successor in 1936, though under court orders he was to wind up this case with others; his record showed a list of 27 creditors, among them the Hazard Bank and Trust Company. He said that creditors were notified that Combs was adjudged a bankrupt August 21, 1928. He found a claim filed by the Perry Bank and Trust Company October 3, 1928, on a note of Mr. Combs, for the amount of $3,176.74. This note was secured by a mortgage executed on September —, 1928. It is apparent that this is not the note which is the subject of controversy. Mrs. Combs was not a party to the bankruptcy proceeding, and it appears that four months prior to the filing of the petition in bankruptcy Mr. Combs conveyed the questioned property to his wife. The record shows that the note in question was in the hands of the Cincinnati bank as collateral during the early stages of the bankruptcy proceeding.

There is no doubt of the rule that when a bankruptcy court of competent jurisdiction takes charge or possession of property under a proper proceeding, the property is withdrawn from the jurisdiction of state courts, and where proceedings are begun prior to foreclosure, the mortgagee cannot proceed without consent of the bankruptcy court. Investor's Syndicate v. Smith, 9 Cir., 105 F. (2d) 611. But here the bankruptcy court never had possession, even by caveat, of this property. Had it been so it would not, under the circumstances, have been subject to claims of common creditors, and it further appears that at time of foreclosure the bankruptcy proceeding had been closed.

We take up the pleas of limitation, both the five and seven year statutes, the first on the ground that the note by the deposit with the Cincinnati bank as collateral, placed it on a footing of a bill of exchange, and Ky. Stats., Sec. 2515 barred action. It is admitted by all parties that the note was indorsed in blank by the president and cashier of the Perry Bank and Trust Company, and later by the Cincinnati bank as follows:

"Pay to the order of any bank or trust company.

The Fifth and Third National Bank and Trust Co., Cin., Ohio.''

Undoubtedly the first indorsement was made when the note was attached to the Perry Bank's note as collateral, and the second when the $40,000 note was paid and collateral returned to the debtor bank. It is true that when a note is assigned before maturity it is placed on the footing of a bill of exchange and the statute supra applies. Southern National Bank v. Schimpeler, 160 Ky. 813, 170 S. W. 178. This note was not discounted, and was not negotiated, in the sense of the word, in a way as to make it a bill of exchange. Southern National Bank v. Schimpeler, supra, and same case, 159 Ky. 372, 373, 167 S. W. 148; Sweeney v. Taylor's Ex'r, 205 Ky. 390, 266 S. W. 665; Thomas v. Siddons, 230 Ky. 651, 20 S. W. (2d) 482; Coral Gables v. Barnes, 247 Ky. 292, 57 S. W. (2d) 18; National Bank of Lima v. Deaton, 279 Ky. 606, 131 S. W. (2d) 495. The seven year (suretyship) statute does not apply. Ky. Stats., Sec. 2127, 2551, 2552; Alexander v. West, 241 Ky. 541, 44 S. W. (2d) 518.

Laches is next discussed. Mrs. Combs plead that her property was worth $7,000 when the note was taken over by the bank's agent, who, she says, never tried to collect it, and let it run along until her property had, by reason of circumstances over which she had no control, depreciated in value to such an extent that payment at this time would leave her without property, and that she was led to believe that the obligation had been discharged through the bankruptcy proceedings, and that Cisco was negligent in discharging his duty to creditors by not collecting at a time when she could pay without great inconvenience. It would have been a simple matter to have ascertained for a certainty whether or not the obligation had been discharged. The plea of negligence does not fit well. While it was the duty of Cisco to use every effort to collect for the good of the creditors, it was also the duty of Mrs. Combs to ascertain if the note was unpaid and if so to pay it.

The question of laches is one for the court, based on proven facts, which here would not have justified the court in holding estoppel by laches. Estoppel by conduct arises, generally where the person against whom it is pleaded, by his conduct induces an innocent person relying on his conduct to believe in the existence of a

particular state of facts and to act thereon to his prejudice, Graves County v. Sullivan, 283 Ky. 130, 140 S. W. (2d) 636; Fordson Coal Co. v. Garrard, 277 Ky. 218, 125 S. W. (2d) 977, 121 A. L. R. 841; Edge v. City of Lexington, 277 Ky. 750, 127 S. W. (2d) 393, and is put into operation to protect one, who being innocent is misled by misrepresentation to change his course of conduct. Campbell v. Salyer, 290 Ky. 493, 494, 161 S. W. 596. Reviewing the proof here we find nothing that would justify an upholding of the plea.

The question of exercise of bad faith and fraud arises on the claim that the order of sale was obtained by fraud of the plaintiff. Mrs. Combs says that "for reasons unknown" to her, one of plaintiff's attorneys, for the purpose of defrauding her, paid $500 for the note which he had appellee transfer to his brother, who was to prosecute the suit in the name of Salyer, and that the understanding was that "they would put up all the cost and accept for their services all over and above the amount paid or agreed to be paid for the note."

The record shows that the suit was instituted in the name of Salyer, and the note was assigned after litigation, though the action proceeded in the name of appellee, without objection so far as the record shows. Sec. 20, Civil Code of Practice. The only proof of appellant on the matter of fraud, or illegal proceeding, is to the effect that after the action was begun she and Salyer had agreed to settle their differences upon the payment by her to appellee a sum of $500. Appellee admits that he had heard of the offer, and that he gave her some time in which to raise the money, but she failed to do so. She says little about the failure to raise the money, nor does she say that the agreement, actually without further consideration, was to be unlimited as to time.

Upon her failure the transfer was made to one of the Bakers, who was on the stand for appellants as if on cross-examination, but was not questioned as to the alleged Salyer-Baker transaction. Salyer testified at length on the matter, and said that another attorney was interested in the defendant bank assets. The other attorney was to see to the collection of the debts under a contingent contract, and this note was turned over to him for collection. This attorney turned the accounts to still another attorney, and they and not Salyer carried on all negotiations relative to all claims in their

hands, including the one in question. He said that he was not to pay any costs, but they were to come out of proceeds from collections. Fordson Coal Co. v. Garrard, 277 Ky. 218, 125 S. W. (2d) 977, 121 A. L. R. 841.

We fail to find any ground to uphold the charge that by the transaction between Salyer and his attorneys, the assignee of the claim, or his attorneys, violated the terms of Section 209, KS, which relates to (maintenace) contracts or agreements for officious inter-meddling services rendered by a stranger to the subject matter involved, in consideration of a sharing of the proceeds of the recovery. Holmes v. Clark, 274 Ky. 349, 118 S. W. (2d) 758, and what is said therein on the subject is particularly applicable here as demonstrating that the statute has no application.

The question of lack of good faith, or fraud alleged on the part of appellee, we need not discuss further than to say that before either ground may be sustained, each must be plead and proven by clear and convincing evidence. Rice v. Hord, 252 Ky. 469, 67 S. W. (2d) 715. Here proof was far from sufficient.

The charges (1) that the person making the sale and report was not in fact or law the master commissioner, and (2) that appellee had the property appraised at $3,000, when in fact it was only worth $2,000, are not of merit. To all intents and purposes the person making the sale was the master commissioner until qualification of a successor. There is no showing that appellee had aught to do with the appraisement, or in what manner the rights of appellant were prejudiced because of these alleged grounds, or the further ground that the commissioner did not accept her bid of $500. We fail to find any substantial ground upon which we might order a reversal of the chancellor's judgment, hence it must be affirmed.