## Haag v. Northwestern Mut. Life Ins. Co.

March 24, 1944.

Ollie James Cohen and Edward W. Bensinger, Jr. for appellant.

Bullitt & Middleton for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER—Affirming.

This appeal is prosecuted from a judgment of the

Jefferson circuit court, common pleas branch, fourth division, entered pursuant to a directed verdict in favor of the appellee, Northwestern Mutual Life Insurance Co. (hereinafter referred to as the company), in an action brought by the appellant, Grace O. Haag, against the company to recover, as beneficiary, on the policy of life insurance issued upon the life of her deceased husband, Lee K. Haag.

This "whole life policy" was issued by the company to Lee K. Haag on November 19, 1923, in the sum of $2,500, in consideration of the payment of $35.33 and the payment of a like sum on or before the 19th day of November and May in every year during the lifetime of the insured and further therein providing that immediately upon receipt of the policy and due proof of the insured's death, the company would at its home office pay the said sum of $2,500, less "any unpaid premium or premiums to the end of the current policy year and any other indebtedness on account of this policy" to his wife, Grace O. Haag, as beneficiary. Further the policy recited that it was issued by the company and accepted by the parties in interest subject to the provisions stated on "the consecutively numbered pages hereof which are hereby made a part of this contract."

Thereafter, in December, 1924, at the insured's request, the premium installment payments were changed from a semi-annual to a quarter-annual basis in the amount of $17.85 each, due and payable on February 19, May 19, August 19 and November 19 of each year during the continuance of the policy.

It further appears that during the period of years extending from 1924 to and including November, 1932, the annual dividends due on the policy's November 19 anniversary date were applied, at the insured's election, to the payment of the quarterly installment of premium falling due on each November 19.

Also it is disclosed by the record that during this period of years the insured, in order to meet these quarterly premium installments, had from time to time borrowed from the company, upon the security of its policy, various amounts of money, which by August 14, 1933, amounted to $360.49, including interest, which was approximately the then full loan value of the policy. Further the insured had found it difficult to meet his

February 19, 1933, quarterly premium and had suffered it to go unpaid until in May, 1933, and did further fail to meet his May, 1933, installment of premium when due, but having obtained an extension of time in which to pay it, on August 14, 1933, he effected a loan arrangement with R. F. Clendenin, the general agent for the company in Kentucky, whereby he secured an increase of his then policy loan of $360.49 to the sum of $372, the policy's then full loan value, and also at the same time secured a personal loan from Mr. Clendenin in the amount of $24.19, with which he paid the company's then outstanding debt and interest, amounting to the said $360.49, the then overdue May 19, 1933, quarterly installment of premium of $17.85 and his imminently approaching August 19, 1933, quarterly installment of premium of $17.85.

Simultaneously with the negotiating of these new loans on August 14, 1933, the insured assigned his policy to the company to secure his increased $372 debt to it and at the same time executed and delivered to Mr. Clendenin his note for the amount borrowed from him, with interest at 6% per annum, payable on November 18, 1933, and therein also assigned to Mr. Clendenin, as security for his loan, "the above numbered policy and all proceeds or money which may become due and payable under or by reason thereof" and also at the same time delivered to Mr. Clendenin an undated but signed "direction" to the company to pay him the dividend due November 19, 1933, on his policy.

This undated letter or "direction" remained in the possession of Mr. Clendenin until November 20, 1933.

It appears that this procedure, in giving Mr. Clendenin his undated but signed "direction" to the company to pay him the dividend due November 19, 1933, was adopted and followed by the insured because he did not want his August 14, 1933, "direction" to the company to be used by Mr. Clendenin unless the insured failed to pay "out of his own pocket funds" his $24.19 debt to Mr. Clendenin at its November 18, 1933, maturity date. Therefore Mr. Clendenin withheld giving the company notice of that undated "direction" until after Mr. Haag failed to pay his note at its maturity date, it being the insured's intention to himself pay the Clendenin note, if he had the money, at its maturity on November 18, 1933, but if it so happened that on or before the date

he did not have the money with which to pay the note, Mr. Clendenin thereafter had a lien on his November 19, 1933, dividend. Mr. Clendenin, in keeping with such understanding had between him and the insured, retained the insured's signed but undated "direction" to the company until he could tell whether or not the insured would himself pay that note, with the result that the company had no knowledge of the existence of the insured's undated "direction" given Mr. Clendenin until some time subsequent to November 20, 1933.

About October 27, 1933, Mr. Clendenin mailed the insured a notice stating that his note would become due on November 18 and that his prompt attention would be appreciated. Mr. Haag ignored this notice and demand for payment made by Mr. Clendenin. Consequently on the next business day after the note matured, Monday, November 20, Mr. Clendenin (1) mailed to the company (a) Mr. Haag's August 14, 1933, $24.19 note given him and (b) Mr. Haag's written "direction" to the company to pay the November 19, 1933, dividend to Mr. Clendenin and requested that the November 19 dividend be paid, in accordance with Mr. Haag's "direction," to Mr. Clendenin as a credit on that note.

The company strictly complied with the insured's "direction" to it, by applying the whole of the insured's November 19, 1933 dividend as a credit on the insured's note to Mr. Clendenin and on November 29, 1933, Mr. Clendenin, as state agent of the company, notified the insured that, in accordance with the insured's explicit direction, "we used the dividend due November 19 of $24.38 to pay the (Clendenin) note of $24.19 and interest."

It will be noted that Mr. Clendenin states this notice was given the insured on November 29, 1933, although Mrs. Haag, the beneficiary under the policy, denies she ever received it. However, it is conclusively shown that it was then, nearly three weeks before the expiration of the 31 day grace period for payment of the November 19, 1933, quarterly installment of premium, mailed Mr. Haag.

Thus it appears that the insured was, by this notice sent him on November 29, 1933, duly informed during the grace period that the November 19, 1933, dividend was no longer available to pay the November 19 premium installment. He was also otherwise than by this

notice advised of this fact, because he knew, at all times after November 18, 1933, that he had not paid the Clendenin note and that his failure to pay it would and had caused Mr. Clendenin, according to their understanding, to forward to the company the insured's direction'' to pay that dividend to Mr. Clendenin.

It is further shown by the evidence that about October 12, 1933, the company mailed to Mr. Clendenin, their general agent, notices of premiums due during November, 1933, among which was one for the insured, attached to which was the company's official receipt, the notice stating that the insured's dividend amounting to $24.38 took care of his November, 1933, premium and further advised that ''no cash remittance is required'' and that the surplus dividend of $6.53 would be applied to the premium next due.

According to the beneficiary's testimony, this notice was mailed the insured about November 5 or about two weeks before November 19, 1933, at which time both the policy dividend and the November quarterly premium on the policy would be due and payable.

The insured did not pay the November 19, 1933, installment of premium, the notation on the premium notice to the contrary notwithstanding, therefore the policy, in accordance with the terms of its applicable provisions, lapsed and automatically went upon an extended term insurance basis for a period that expired on December 19, 1933, it being provided under its ''nonforfeiture, surrender and loan provisions'' (paragraph 12c) that: ''Upon default in payment of premium, unless paid within the grace period, the amount of this policy and any existing dividend additions, less any indebtedness to the company on account hereof, shall be extended automatically as non-participating term insurance for such time from the date of default as the then cash surrender value will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent.''

It further provided by paragraph 12-g of the policy that: ''Failure to pay a policy or premium loan or the interest thereon shall not avoid or terminate this policy until the total indebtedness to the company secured by this policy shall equal or exceed the then cash surrender

value, nor until thirty-one days after notice thereof shall have been mailed to the last known address of the insured and of any assignee. Thirty-one days after the mailing of such notice this policy shall cease and determine.''

On March 2, 1934, the company did again by letter notify the insured that his policy had lapsed for nonpayment of the November, 1933, premium and that according to the terms of the policy, the extended term feature (as provided by its said clauses) had been automatically applied as of the date of November 19, 1933, upon his failure to pay his premium then due and that this extended automatic term insurance had expired on December 19, 1933, and accordingly returned the insured his policy, as being no longer in effect.

It is to be here noted that the insured's insurance terminated as a result of its lapse for nonpayment of the November 19, 1933, premium and not because of his failure to pay his policy indebtedness to the company and, therefore, it was not necessary that the company give the insured the thirty-one day grace or any notice of termination referred to in his policy (paragraph 12g) as hereinabove set out.

Such has become this court's fixed construction of that provision, as was recently reiterated in Brisbay v. Prudential Insurance Company, 262 Ky. 161, 89 S. W. (2d) 642, 644, the court therein saying: ''It is our conclusion, therefore, that the 30 days' notice was necessary only if the company sought to cancel the policy for the nonpayment of the insured's loan indebtedness or the interest thereon, but not necessary to terminate it for nonpayment of premiums, and the loan having practically exhausted the reserve or cash value of the policy, there was left an insufficient sum to extend the insurance to the time of the insured's death, and therefore the policy had lapsed.''

The insured having ignored the notices and demands made upon him to pay his November 19, 1933, quarterly premium then due and having never paid the same or any part thereof, the policy had lapsed and was not in force on March 30, 1934, the date of his death.

Such being the condition of the policy, the company refused to honor or pay the death claim made upon it by the appellant, the deceased's beneficiary. She there-

upon instituted this suit, seeking a recovery on the policy.

The company by its answer pleaded and defended the claim on the ground that the policy had lapsed for the nonpayment of premium, on which the plaintiff joined issue by reply, alleging that the company was estopped to assert or plead a forfeiture of the policy for nonpayment of premium.

The lower court, upon a hearing and trial of the case upon these issues, peremptorily directed the jury to return a verdict for the company, on the ground that the estoppel plea urged by the plaintiff was, under the facts here appearing, not applicable nor effective.

After a careful reading and consideration of the learned trial court's opinion, upon which his complained of judgment was accordingly pronounced, we are led to conclude that the trial court's challenged ruling, in directing a verdict for the defendant company, was proper.

The evidence, upon which plaintiff's plea of estoppel is based, is to the effect that the insured had borrowed from the company the full loan value of his policy ($372), which with accrued interest thereon to November 19, 1933, amounted to $377.62, while the gross cash value of the policy on that date was $379.57. The amount of the outstanding policy loan secured by the policy, with interest thereon, was for $377.62, which left, as a difference between the cash value of the policy and the amount of the loan and interest, a net reserve of only $1.95. The insured's attained age at that time was forty-six years and the face amount of such policy, less the outstanding indebtedness, was $2,123.

Pursuant to paragraph 12c of the policy, hereinabove set out, upon default in payment of the November 1933, quarterly premium due thereon, the amount of the policy, less the indebtedness owing thereon, to-wit, $2,123, was under that paragraph of the policy extended automatically as nonparticipating term insurance. The then cash value of the policy ($1.95) at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at 3% was sufficient to purchase term insurance for $2,123 for only thirty days from the date of default, November 19, 1933, to December 19, 1933,

at which later day the policy became of no value whatsoever.

Therefore, the policy having ceased to exist at the time of the insured's death on March 30, 1934, we are led to conclude that the learned trial judge properly ruled that plaintiff (here appellant) had failed to show either by her pleadings or proof that she was entitled to recover as beneficiary on the policy contract, wherein it was expressly provided that the policy was issued by the company and accepted by the parties in interest subject to the provisions therein stated and expressly made a part of the contract.

In harmony with those of its provisions as herein above set out, the insured having failed to pay his November 19, 1933, quarterly installment of premium of $17.85 when due and also having failed to pay such premium within the automatically extended term of the policy to December 19, 1933, the value of his policy at that time became entirely exhausted, with the result that the policy was no longer of any force or effect whatever.

Appellant contends that the appellee company was estopped to assert the policy's lapse was caused by the insured's failure to pay the November 19, 1933, installment of premium, because it was both alleged and established by the proof that the company had advised the insured, when sending him notice of his quarterly installment premium, due November 19, that no cash remittance was necessary as the premium would be paid out of the November 19 dividend and the balance applied to a following premium installment.

However, it is conclusively shown that Mr. Haag received the company's November 29, 1933, letter long before the expiration of the thirty-one day grace period for payment of the November 19, 1933, installment of premium, by which he was advised that the company had applied his November 19 dividend, in accordance with the insured's "direction" given the company, to the payment of the insured's Clendenin note and not to the payment of the November 19 premium installment. Mr. Haag had ample time thereafter, during the grace period, within which to pay that premium and, therefore, the notation made in the November 19 premium notice, that the dividend on that day due would pay that premium and that no cash remittance was required, did

not mislead nor in any way cause him to change his position. Further, even if Mr. Haag did not receive the company's November 29, 1933, letter, there arises no estoppel in appellant's favor because the insured well knew the true facts existing when he received the November 19 premium notice, because he had already directed the company to apply that entire dividend to the payment of his Clendenin note and also knew on the day his premium fell due that his dividend was not available for paying it as he had not otherwise paid the Clendenin note. Therefore, as the insured knew all the true facts, he was not misled or caused to change his position to his prejudice through reliance on the notation made on the November 19, 1933, premium installment notice as above set out and his position is such that appellant can not be heard to assert an estoppel against the company, especially where, as it here appears, the company sent that notice to the insured when it was entirely ignorant of the policy transactions which had taken place between him and Mr. Clendenin, whereby the insured had previously assigned his November 19, 1933, dividend to Mr. Clendenin for payment of his note given Mr. Clendenin for the latter's loan of $24.19 made him.

By way of summarizing these detailed facts, it may be said that Mr. Haag knew when he received the company's November 19, 1933, installment of premium notice, about two weeks before it fell due, and saw the notation thereon of the company's intention to apply the November 19 dividend to the payment of that premium, that it was ignorant of the fact that he had previously given to Mr. Clendenin a ''direction'' to the company to pay that dividend on the Clendenin note and, further, that Mr. Clendenin, in keeping with the agreement made with him, had not informed the company of that circumstance; that the insured knew that the November 19, 1933, dividend would not be available for the company to apply it to the payment of the premium installment falling due on that day, if he failed to pay his Clendenin note at its Maturity on November 18, 1933. The insured, in view of the facts stated, certainly knew and is chargeable with knowing that the company made that notation on the premium notice sent him when ignorant of the very fact which Mr. Haag himself fully knew.

We have repeatedly held that no one can claim an estoppel where he himself knows the true facts.

To such effect in Fordson Coal Co. v. Garrard, 277 Ky. 218, 125 S. W. (2d) 977, 980, 121 A. L. R. 841, we said: "In considering a plea of estoppel, two things must be clearly established: (1) An act by one party that would estop him; and (2) the other party has been misled by it. This, of course, imports his innocence of the true situation or real facts."

Also in Torbitt & Castleman v. Middlesboro Grocery Co., 147 Ky. 343, 144 S. W. 16, 17, we held there was no estoppel because the one asserting it "knew all the facts" and there declared: "An estoppel never arises where the opposing party is not in fact misled and knows the facts." See also in accord 19 Am. Jur. secs. 42, 49 and 194.

We are, therefore, in consonance with the holding of the cases and text cited, led to conclude that the learned trial court's rulings were in harmony with the well settled rules stated and, perceiving no error committed by the trial court, it follows that its judgment, denying plaintiff recovery on the policy, must be and it is affirmed.