# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

###### AT THE

## OCTOBER TERM, 1919.

PARKER *et al.*, receivers, for use, etc., *v.* CROSBY *et al.*

1. If one acts on representations not made to him and not intended by the declarant for him, he will do so at his own risk. Such declarations do not operate as an estoppel against the declarant.
   (a) Under the evidence in the record, estoppel is not involved in the case; and a charge on that subject was error as being not authorized by evidence.
   (b) It was also error to refuse to rule out, on motion, the evidence relied on to show estoppel.
2. "A pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein."
3. The other grounds of the motion for new trial, in so far as they were sufficient to present a question for decision, are not of such character as to require a reversal.
4. The petition as amended was not subject to any of the grounds of the demurrer.
5. It was not error to disallow the amendment to the defendants' answer.
6. The court did not err in refusing to dismiss the case on motion for nonsuit.

Nos. 1417, 1418. FEBRUARY 14, 1920.

Application for partition. Before Judge Highsmith. Appling superior court. January 23, 1919.

H. J. Parker et al., receivers of the Citizens Banking Company of Baxley, Georgia, for the use of H. Cleland, filed a petition for

1

partition against R. L. Reynolds, S. B. Brooks, and C. C. Crosby, alleging substantially the following facts: On September 10, 1906, Sarah Crosby conveyed a certain tract of land to F. I. Thornton, who immediately thereafter conveyed an undivided half interest to J. E. Chitty. On May 15, 1907, H. Cleland filed his petition in the superior court of Appling County, against F. I. Thornton and J. E. Chitty, claiming an undivided third interest in the lands, and praying for specific performance. The case was referred to an auditor on March 13, 1912, and final judgment was rendered on July 18, 1914, the decree adjudging H. Cleland entitled to specific performance by conveyance of an undivided third interest in the land in question. On November 12, 1914, H. Cleland executed to the Citizens Banking Company, for a consideration of $5, his deed to an undivided third interest in the land in controversy, the deed reciting the fact that it was given to secure the bank for an indebtedness then owing by Cleland. Pending the litigation, on September 23, 1907, F. I. Thornton and J. E. Chitty sold and conveyed the land under warranty deed to H. C. Newton. On December 3, 1907, Newton conveyed the land to Robert L. Reynolds and S. B. Brooks, executing quitclaim deeds to each other for a half interest in the land. S. B. Brooks executed a bond for title to C. C. Crosby to 127-1/2 acres of the land. Reynolds and Crosby are in possession of the land (when the present suit by the receivers was filed). The receivers pray that the land be partitioned and sold, and that one third of the proceeds of the sale be delivered to them.

Reynolds, Brooks, and Crosby filed separate answers, averring that they purchased the land in good faith, and in good faith have kept and held the uninterrupted, exclusive, and adverse possession of them for a period of more than seven years, with title thereto, making valuable improvements thereon; that H. C. Newton, their predecessor in title, purchased the lands in good faith and relying on the statements of H. Cleland; and that Cleland was thereby estopped to deny the title of the defendants. The defendants pray that the security deed to the bank, executed by H. Cleland, be canceled as a cloud upon their title.

On the trial H. D. Dowdy testified that he and H. C. Newton were negotiating for the purchase of the land, and witness went to H. Cleland and stated to him that he was going to buy the land if he was not going to get into a lawsuit about it, and Cleland said,

"They have given bond, and I depend on my bond; go ahead and buy the property if you want to." Witness informed Newton of what Cleland had stated, and Newton purchased the property, Dowdy deciding that he did not want to be a party to the purchase. Newton testified that Dowdy told him of the conversation he had with Cleland, and that he then purchased the land from Thornton and Chitty. Newton did not testify unequivocally that Cleland told him personally to buy, and that he relied on his bond.

The jury returned a verdict in favor of the defendants, and judgment was entered, decreeing "that the prayers of the plaintiffs' petition be and the same are hereby denied and refused." The plaintiffs made a motion for new trial, which was overruled, and they excepted. The defendants in error filed a cross-bill of exceptions to rulings referred to in the 4th, 5th, and 6th headnotes.

*Padgett & Watson,* for plaintiffs.

*C. H. Parker* and *W. W. Bennett,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. None of the headnotes require elaboration except the first and second. On the trial of the case certain evidence was offered, tending to show declarations made by Cleland to Dowdy and Newton, which it. is argued would act as an estoppel on Cleland in setting up title to the land in controversy as against Newton and his privies in estate. The evidence was admitted, and later a motion was made to rule it out for the reason that it was not sufficient to show that the declarations were made directly to Newton, or to any one for him. The motion was overruled, and exception was taken to that ruling. The court also gave to the jury certain instructions on the doctrine of estoppel. Exception was also taken to these charges, on the ground that the evidence did not authorize a charge on the law of estoppel. One of the witnesses for the defendants, Dowdy, testified as follows: "After Mr. Cleland had given bond I had come to town here and was going to buy the place, Mr. Newton and myself; in other words, I was doing the trading, and Mr. Newton was going to take a half interest, and I went to Cleland. I was acting for myself and Mr. Newton, and met Cleland about the drug-store down here, and told Mr. Cleland that I was going to buy that land if I was not going to get in a lawsuit about it, and Mr. Cleland said, ' They have given bond, and I depend on my bond; go ahead and buy the property if you want to.' I informed Mr. New-

ton of that. That was the same day Mr. Newton bought it we commenced to fix the title; we went right on up there in the office and was going to fix the title, and some of the heirs of the Crosby estate hadn't — the title was not exactly like I wanted it, and I says to Mr. Newton, 'You can have it all. I don't care to try to get the heirs to sign it. I will just turn the whole thing over to you. I don't care to fool with it.' I didn't consider Thornton and Chitty's title just what it ought to be. I thought the heirs of the Crosby heirs would have to sign it to make it a perfect title, and I didn't care to fool with it to get that done; and I just said, 'Mr. Newton, if you want to take it and perfect the title, you can have my interest, and I will come out at that point.'" Another witness for the defendants, Newton, testified: "I could not swear that I heard him; either he or Mr. Dowdy informed me or told me." The plaintiffs introduced an abstract of the evidence of Newton as reported by the auditor upon the trial of the case of Cleland *v.* Thornton and Chitty, for specific performance, as follows: "I remember the conversation with Mr. Cleland about buying this land. The information that I received from Mr. Cleland was to go ahead and buy the land, and he was relying entirely upon his bondsmen. This is the first time that I ever heard that after I bought the land I would buy a lawsuit. I can't remember what he said, but Mr. Dowdy and myself between the two wanted to buy the land, and he might have done the talking, and we went to see Mr. Cleland, either one or both of us; but I was instructed to buy the land, that he was relying entirely upon his bondsmen. I could not swear that I heard Mr. Cleland make that statement, either he or Mr. Dowdy. He didn't tell me that if I bought it I would buy a lawsuit. I knew when I bought the land this lawsuit was pending at the time. At the time I bought the land these defendants (Chitty and Thornton) were in possession thereof." Cleland denied making the representations attributed to him. It will be seen from a close inspection of the evidence of Dowdy and Newton that the evidence is equivocal as to whether the statements were made directly to Newton, or to any one for Newton. Dowdy did not act upon the representations that were made to him, for he declined to buy the land; nor does the evidence show that Dowdy was authorized to make the same representations to Newton that were made directly to him by Cleland. In *Harvey* v. *West,* 87 *Ga.* 553 (13 S. E. 693),

it was held: "Admissions against one's title to land, and in favor of the title of a third person, will be no estoppel in behalf of one to whom they were not made and who has merely heard of them, it not appearing that they were made for the purpose of being acted upon or with any design or intention that they should be acted upon." See also 11 Am. & Eng. Enc. L. 439 (7). There is nothing in the evidence here to show that Cleland made such declarations, as alleged, directly to Newton or in his presence, or to any one for *him;* and there is nothing to show that Cleland knew or had cause to suspect that Newton was acting upon representations which are alleged to have been made to Dowdy. It might well be that one making declarations to one against his own title would not make such declarations to a third person; and as estoppels are not favored by our law, in order for declarations, amounting to an estoppel, to be binding, it must appear that they were made to the person for whom they were intended, or to some one for him. As it does not so appear from the evidence in this case, estoppel was not established; and the court therefore erred in overruling the motion to exclude evidence bearing upon the question of estoppel, and likewise in charging the jury with reference thereto.

2. Reynolds, Brooks, and Crosby, in their answers, aver that they purchased the land in controversy in good faith, and that they have kept and held the uninterrupted, exclusive, and adverse possession of the land for a period of more than seven years with title thereto, having made valuable improvements thereon; and that Newton, their predecessor in title, purchased the land in good faith, relying on the statements of Cleland, set out in the first division, and that Cleland was thereby estopped to deny defendants' title. But, as we have already observed, there is not sufficient evidence to show that Cleland made such declarations to Newton, or to any one with knowledge that such person was acting for him. Therefore Newton bought, so far as the evidence in this record discloses, at his own peril. Besides, at the time that Newton purchased, the suit of Cleland *v.* Thornton and Chitty was pending in the superior court, and Newton himself testifies that he knew of the pendency of that suit when he bought, but that he relied upon the declaration of Cleland that he would look to his bond and not to the land for his remedy. The rule is that he who takes with notice of an equity takes

subject to that equity. Civil Code (1910), § 4529. A pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein. Civil Code (1910), § 4533. *Royal Arcanum* v. *Riley*, 143 *Ga.* 79 (2) (84 S. E. 428). Suit was likewise pending when the other defendants bought from Newton, and they would be likewise bound by such notice of the equity of Cleland in the land, unless, of course, Cleland had estopped himself by some declaration, which does not appear in the record. It is argued that the suit of Cleland *v.* Thornton and Chitty was not duly prosecuted, and therefore the suit was not notice to them; but it will be observed from the foregoing statement of facts that the suit for specific performance was filed May 15, 1907, and that Newton purchased the land from Thornton and Chitty on September 23, 1907, while the suit was pending. This contention is without merit. It was likewise pending when the other defendants purchased, to wit, on December 3, 1907. The defendants, therefore, being chargeable with notice of the equity that Cleland had in the land, under such circumstances, it cannot be held that the suit was not duly prosecuted by the plaintiff, although judgment was not obtained until 1914. Under such circumstances the defendants' title could not ripen by prescription.

3. The other grounds of the motion for new trial, in so far as they were sufficient to present a question for decision, are not of such character as to require a reversal.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*