(No. 22482.—

THE TRUSTEES OF SCHOOLS *et al.* Appellants, *vs.* THE VILLAGE OF CAHOKIA, Appellee.

*Opinion filed October 19, 1934.*

F. E. MERRILLS, for appellants.

THOMAS L. FEKETE, JR., for appellee.

Per CURIAM: The trustees of schools of townships 1 and 2 north, range 10 west, St. Clair county, filed a bill in the circuit court of that county to have confirmed in them, for the use of school district No. 50, the title in fee simple to lots 34, 51 and 130 of the village of Cahokia, and that any claims made thereto by the village of Cahokia and the county of St. Clair, parties to the suit, be held null and void, as clouds upon the complainants' title. The village of Cahokia and the county of St. Clair filed answers. The village also filed a cross-bill and the county sought to do so but was denied leave. A replication was filed to the answers. The cause was referred to a master in chancery who heard the evidence and made a report recommending that a decree be entered quieting and confirming the title to lots 34 and 51, in the village of Cahokia, sub-

ject to the right of user of the lots by the trustees of schools of townships 1 and 2 for the use of school district No. 50, for school purposes, until such right of user should be revoked by the affirmative action of those inhabitants of the village of Cahokia who reside within the confines of school district No. 50, and quieting and confirming the title to lot 130, in the trustees of schools, free and clear from all adverse claims. At the close of the hearing before the master, the county of St. Clair disclaimed any interest in the subject matter of the suit. The court entered a decree in conformity with the recommendations of the master save that the right of user of lots 34 and 51 for school purposes was directed to be continued so long only as a school should be conducted in the present building on lot 51, without any addition thereto other than necessary repairs and without the right to erect a new building on either of the lots, and that the village of Cahokia should be entitled to the possession of the lots when the trustees of schools should abandon or fail to conduct a school on the premises. Both the trustees of schools and the village prosecute appeals from that decree.

After reciting briefly the history of title to land in the original village of Cahokia from 1722 to 1874, it is alleged in the bill that in the year 1874 and for a long time prior thereto, lots 34, 51 and 130 in the village of Cahokia were school sites upon which schools were maintained; that these schools have been conducted continuously to the present time, and that the title to the lots in fee simple should be confirmed in the complainants. The village of Cahokia, in its answer, denies that the lots mentioned were, in 1874, school sites or that schools have been maintained on them continuously to the present time or that the complainants are entitled to the relief prayed. The village in its cross-bill alleges that lots 34 and 51 constitute a public square of the village and are shown as such on the plat recorded in plat book "B," page 24, and that upon the incorporation

of the village of Cahokia in 1926 the newly organized village became the owner of and entitled to the possession of the lots. The prayer is that the title to the lots be quieted in the village of Cahokia.

There is now no controversy over the title to lot 130. The questions presented for determination are whether lots 34 and 51 constitute a public square and, if so, whether the land is subject to the right of user by the trustees of schools for the use of school district No. 50, or whether the title to the lots should be quieted in the trustees of schools. The land included in the original village of Cahokia was confirmed in the inhabitants of the village as a common. Their title has been recognized at different times and in a variety of ways by the Federal and State governments. (1 Story's Statutes of the United States, 1789-1827, p. 204; 2 American State Papers, "Public Lands," p. 194; Constitution of Illinois, 1818, art. 8, sec. 8; Laws of 1819, pp. 122, 123; *Doe ex dem.* v. *Hill,* Breese, 304; *Hebert* v. *Lavalle,* 27 Ill. 448; *Lavalle* v. *Strobel,* 89 id. 370; *Bernier* v. *Russell,* 89 id. 60; *Haps* v. *Hewitt,* 97 id. 498; *Rutz* v. *Kehn,* 143 id. 558). Four deeds were offered in evidence to show the existence of a tract known as a parade or public square, which was adjacent to the lands conveyed by the deeds. These instruments were executed in 1794, 1831, 1834 and 1837 respectively. Seven witnesses, residents or former residents of the village of Cahokia, ranging in age from sixty to seventy-two years, testified that within their memories, lots 34 and 51 had been called by the people of the village a public square. One of them testified that the tract was sometimes called the parade. By a special act of February 14, 1855, the supervisor and school trustees of the village of Cahokia were authorized to cause a survey and plat of the village to be made describing the lots, streets and public grounds. When completed the plat and survey were to be submitted to the inhabitants of the village for their approval. (Private

Laws of 1855, pp. 199, 200). Lots 34 and 51 appear on the plat so approved and bear the lengend, "Public Square." These lots have never been the subject of conveyance of record. A school was built on lot 51 about 1868. It was under the control first of the trustees of schools of the original village of Cahokia, later, a receiver of school funds appointed by the circuit court of St. Clair county in 1909, and finally, the trustees of schools, townships 1 and 2 north, range 10 west, in St. Clair county. By a special act of the General Assembly passed in 1921, the township treasurer of township 1 north, range 10 west of the third principal meridian, was made the custodian of the funds under the control, formerly of the supervisors of the village of Cahokia and their successors, and later of the receiver of the village of Cahokia, and he was authorized to administer the school system substantially as provided by general law. (Laws of 1921, p. 176). A new frame school building was erected on lot 51 about the year 1920, and a school has been maintained thereon continuously since the construction of the first building in 1868. The lots are inclosed by fences.

It is admitted that the title to the land designated as the public square was originally in the inhabitants of the village and that there have been no conveyances of the land. The school trustees, however, assert that when a building was erected on the land and a school conducted therein a trust was created which has been recognized by the inhabitants of the village for a period of more than sixty years and that they are now estopped from denying the impressment of the trust upon the land. There is nothing in the record to show that school trustees had authority to erect the original school building upon the public square. The village was not then organized under the general Cities and Villages act. The school trustees were the only legal representatives of the village authorized to select a site and build a school house. (Laws of 1841, p. 65). They repre-

sented the village directly and derived the school funds from the rentals of the commons, as the law then provided. There was no statutory authority for placing the school building in or upon the public square. Notwithstanding the representatives of the village placed the building there, the inhabitants of the village evinced no purpose to abandon as a public square, the tract comprised of lots 34 and 51. Their definite action in adopting the survey and plat which showed the tract as a public square disclosed their purpose to retain it as such. The adoption of a plat and survey constitutes a sufficient dedication. *Melin* v. *Community Consolidated School District No. 76,* 312 Ill. 376; *Guttery* v. *Glenn,* 201 id. 275.

It is admitted that to obtain the relief sought by the original bill, the doctrine of estoppel must be invoked. That doctrine may be invoked against a municipal corporation where there have been positive acts by the municipal officers which may have induced the action of a party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, but mere non-action is not sufficient to work an estoppel. (*Melin* v. *Community Consolidated School District No. 76,* 312 Ill. 376; *Logan County* v. *City of Lincoln,* 81 id. 156). In applying the doctrine the courts will not decide the question by the mere lapse of time, but by all the circumstances of the case, and hold the public estopped or not, as right and justice may require. (*Martel* v. *City of East St. Louis,* 94 Ill. 67; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 id. 25). The doctrine of estoppel is invoked to prevent fraud and injustice. (*Melin* v. *Community Consolidated School District No. 76,* 312 Ill. 376). In the absence of an allegation or proof that the village authorities intend to remove the school building from lot 51 or are seeking to hinder the school directors in conducting a school in that building, there is no basis in the record for the restriction, imposed by the decree,

upon the use of lots 34 and 51 as a public square. The reservation by the decree of the right to use the lots for school purposes is without foundation in allegations or proofs. The real purpose of the bill is disclosed by the allegation that unless the claims of the village of Cahokia and the county of St. Clair are declared null and void, the defendants will "hinder and obstruct the directors of schools for school district No. 50 from building a new school house on said premises, or an addition to the present school house, or from selling said lots in the manner provided by law, in the event said property shall ever become no longer of use or necessary for school purposes." The doctrine of estoppel may not be invoked to permit the trustees of schools to exercise additional or new rights with respect to building upon or selling the land hitherto known as a public square. *Melin v. Community Consolidated School District No. 76, supra.*

The inhabitants of the village of Cahokia in 1926 voluntarily adopted the provisions of the Cities and Villages act and became a municipal corporation under the general law. The previous form of government over the territory constituting the original village of Cahokia ceased and its title to and rights of property passed to the present village to be governed by the general act. This title and these rights include the preservation of lots 34 and 51 as a public square. *Maywood Co. v. Village of Maywood,* 118 Ill. 61, p. 71; *Marsh v. Village of Fairbury,* 163 id. 401, p. 407; *Village of Riverside v. MacLain,* 210 id. 308, p. 320.

The decree of the circuit court is modified by striking therefrom the reservation to use lots 34 and 51 of the village of Cahokia for school purposes. In all other respects that decree is affirmed. *Decree modified and affirmed.*