CITY OF JEFFERSON *et al. v.* HOLDER *et al.*

No. 14347. JANUARY 13, 1943. REHEARING DENIED FEBRUARY 12, 1943.

*Davis & Stephens* and *Wheeler, Robinson & Thurmond,* for plaintiffs.

*George W. Westmoreland, W. W. Stark,* and *Thomas J. Shackelford,* for defendants.

REID, Chief Justice. This controversy relates mainly to conflicting claims of the proceeds of certain fire-insurance policies, although this is not the exclusive subject-matter of the litigation. It arises from an action in equity brought by the City of Jefferson and its Board of Education and the Board of Education of Jackson County, through their respective members, against nine individuals, seven of whom are residents of Jackson County where the suit was brought and two of whom are residents of other counties. The petition as amended shows that one or both of these respective boards of education had for a long period of years at various times entered into certain lease agreements in various forms with the "Trustees of Martin Institute." The petition recited the granting of a special charter by the Georgia legislature in 1818 (Ga. Laws, 1818, p. 9) to certain named individuals, under which it was provided they should become a body politic under the corporate name of the Trustees of the Jackson County Academy. Certain amendments were had thereafter. Ga. L. 1859, p. 77; Ga. L. 1884-1885, p. 596. There was a purported succession of trustees and a change of name to "Trustees of Martin Institute." Ga. L. 1859, p. 77.

There were also certain proceedings had before the superior court of Jackson County, purporting to affect the corporate character or powers of this corporation, the original charter of which (Ga. L. 1818, p. 9) merely provided that it "shall be capable of suing and being sued, and of doing all other acts which may be necessary to the execution of the trust confided to them, and for that purpose may have and use a common seal, appoint such officers they may think proper, and remove the same at pleasure. . . That the said trustees shall be capable of accepting all bequests, gifts and donations, which have been or may be hereafter bestowed upon them, and shall hold the same according to the conditions contained in such donation or bequest, and for collecting and laying out or disposing of any moneys or debts due or that may become due said institution, either for tuition or otherwise, and also to fill all vacancies that may happen in their own body." It is gathered from the petition that in its early existence this corporation began to conduct a school first with funds provided by donation by people in the community and tuition charges to pupils. The amount of these funds does not appear. In 1886 certain named trustees of Martin Institute acquired by deed, for a recited consideration of $1500, a certain tract of land situated in the Town of Jefferson on which school buildings were later erected and since which there seems to have been continuously conducted a school known as Martin Institute. For a portion of the time and continuously from 1913 schools have been conducted by one or both of these respective Boards of Education who are plaintiffs in the action under these lease agreements referred to above. One of these leases was entered into in June, 1913, under which the Trustees of Martin Institute in consideration of the sum of $5000 undertook to lease and convey to the Board of Education of the City of Jefferson the lands referred to in the above mentioned deed for school purposes, together with all furniture, fixtures, furnishings connected with the dormitory building and its equipment, pianos, library furnishings, etc. This lease was to run for a period of ten years with the privilege of renewal, but provided that the Board of Education at the expiration of the term or terms would "surrender peaceable possession to the trustees of Martin Institute." It further provided that the Board of Education would keep the building repaired and sufficiently insured against loss by fire at its

expense. The Board of Education agreed to conduct a school in the City of Jefferson during the period of the lease, for at least nine months of each year, which should be free to the children of Jefferson of school age. Certain provisions were alleged to have been made in this lease with reference to the adjustment of rights of the parties in regard to improvements to be made on this property in case the lease should be terminated before its expiration. One of the present defendants was one of the parties acting in behalf of the Trustees of Martin Institute in the execution of this lease. The board of education seems to have operated the school under this lease, without renewal, through the year 1928. That year the City of Jefferson filed in the superior court of Jackson County a proceeding in which it was recited, that it through its board of education "took charge of Martin Institute under an agreement with the trustees of said fund" and "leased said property for a period of ten years," making certain improvements in accordance with the terms of the lease; that in the meantime some of the trustees had died and moved away, and that the city "was desirous of renewing its lease, and had found that it had no one to trade with in coming to a proper renewal" thereof; that two of these trustees with whom the lease had been executed were residents of Jackson County, and apparently service was effected on or waived by them. Upon this petition the court entered an order designating seven other trustees, the court and the parties apparently intending this to effectively name them as successors to those who had from time to time served as Trustees of Martin Institute, although the order actually appointed them "to act in accordance with the will of the said William Duncan Martin any funds he left in said will," this referring to a bequest he had left in 1853 to the Trustees of Jefferson Academy, and which resulted in changing the name of the institution being operated by the trustees. See Ga. Laws 1859, p. 77. In *Trustees of Martin Institute* v. *Maddox,* 139 *Ga.* 491 (77 S. E. 629), a case in which certain citizens of Jackson County sought to compel the trustees to extend the benefits of this bequest for the education of children of that county, this court said: "The academy of Jackson County, of which Martin Institute is the successor, was a private institution. The act of incorporation simply established a legal entity capable of receiving donations. No duties were imposed on the corpora-

tion; and no endowment was given by the State. It was in no sense a public corporation. *Cleaveland* v. *Stewart, 3 Ga.* 283, 291. By the second item of. Mr. Martin's will a bequest of certain stock was given to the trustees of this institution, without restriction as to its use. The trustees were given plenary power over this bequest; they could use it in the construction of buildings, the payment of teachers, or in any way promotive of the general design of the academy. Mr. Martin's generosity was not to the pupils of school age in the County of Jackson, but to a chartered educational institution. This institution was managed by trustees, and his benefaction was to them, to be employed in the management and operation of the academy."

In 1912 (while this does not appear from the petition, we may, as did the trial judge, take judicial notice of it) the General Assembly had passed an act (Ga. L. 1912, p. 1019) amending the charter of the City of Jefferson with reference to its public-school system and its board of education, giving very broad powers with reference to the conduct of public schools, specially authorizing them to purchase lands for school purposes, to erect buildings thereon, and to "rent, lease, or take over for a term of ten years, with the privilege of renewal, from any person or corporation, school dormitory and other buildings, equipment, and furnishings and grounds for school purposes; to liquidate certain debts in consideration of such lease, and to construct other buildings on said leased premises," to repair and improve and maintain same, etc.

In 1929 both of the plaintiff Boards of Education, reciting that "the lease between the Trustees of Martin Institute and the Board of Education of the City of Jefferson" had expired, entered into another lease with the Trustees of Martin Institute, which acted through its president and secretary. This lease provided that substantial funds, including the proceeds of a $20,000 bond issue of the City of Jefferson and a $5000 contribution of the Board of Education of Jackson County, should be invested in the construction of certain buildings on this same property referred to above. It also recited that the City of Jefferson had previously invested moneys in old buildings where the school was conducted; that the Board of Education of the City of Jefferson should continue to conduct grammar school, as well as high school, for the children of school age of the City of Jefferson and of a certain school district

of Jackson County for a period of ten years, with the right of renewal at the option of the boards of education. The Board of Education of the City of Jefferson agreed to "keep all buildings situated upon leased premises insured for at least $30,000, paying all premiums and delivering the policies of insurance carried to the Secretary of the Trustees of Martin Institute;" further, to keep the buildings on the premises repaired and in good condition, and to save the Trustees of Martin Institute and the leased properties "free from any material and mechanics liens." It was further provided "in the event the Board of Education of the City of Jefferson should fail to operate the school, as stipulated in this lease, on the leased property, or abandon the property for school purposes, this lease is to become null and void." This lease was again renewed in 1939 for a period of twenty years, upon the condition that the Boards of Education should have sole control of the property for that period, continue to operate the school under the name of Martin Institute, and "maintain said property in a reasonable state of repair, and carry forty thousand dollars insurance in a reliable insurance company, of both fire and tornado, so as to keep and guarantee the property against loss" to the Trustees of Martin Institute.

While the school was thus in operation in January, 1942, the main school building was destroyed by fire; and the petition alleges that following the fire "either drafts or checks from various insurance companies have been issued, payable as hereinafter stated, amounting to $66,500." Three of these checks totaling $32,000 were payable to the Trustees of Martin Institute, four checks totaling $31,500 were payable to Trustees of Martin Institute, Board of Education of City of Jefferson and Board of Education of Jackson County, and one check for $3000 was payable to Board of Education of City of Jefferson and Board of Education of Jackson County. It does not appear from the petition, but it is perhaps fair to assume, that the policies were actually issued and payable as the checks and drafts were issued. It is alleged "that a majority of the defendants take the position that all of the $66,500 belongs to the Trustees of Martin Institute," and that the plaintiffs have no interest in same. Apparently the checks for the insurance at the time the suit was filed were being held by the defendants. The plaintiffs sought to recover the entire proceeds of the

insurance policies from the defendants, to enjoin them from disposing of the same, and to have, if necessary, a custodian or receiver for the funds.

Aside from what has been stated above, specifically with reference to the contracts and the insurance policies and proceeds, the plaintiffs in their petition contended broadly that the Trustees of Martin Institute was never a valid corporation, because the terms of its charter were too vague to grant any power to function. They made many other attacks on its corporate life and existence, contending, among other things, that the trustees had not had due and proper succession; that, since the original charter, and no amendment, and no attempted amendment renewed or specified any time for its expiration, it had expired by operation of law, and that it had been dissolved by the death of its members without succession; that by reason of its application and acceptance of two amendments to its charter, one in 1884 (Ga. L. 1884, p. 596), and one in an application to the superior court of Jackson County in 1899, a novation resulted under the provisions of the Constitution of 1877, article 4, embodied in the Code Annotated, § 2-2503, and that it therefore had ceased to exist as a corporation and could not be subject to suit and made a party to this action. It alleged also that all of the property involved, including the buildings lost by the fire, as well as the land upon which they were situated, had, on account of their long use for such, been dedicated to public education, and that the plaintiffs by their conducting the school as outlined above had become entitled to all the property for use of public education. It was contended also that these respective boards were without lawful authority to enter into the several lease contracts. No attack was made upon the validity of the act of 1912 (Ga. L. 1912, p. 1019), referred to above, as respects the Board of Education of the City of Jefferson. The prayers, though in considerable detail, were in accordance with the claims set out above. After the issuance and service of a rule nisi, which restrained the defendants as prayed, the judge on interlocutory hearing, ruling upon the demurrer filed by the defendants, taking the view, as expressed in an opinion which appears in the record, that since the plaintiffs had dealt with and contracted with the Trustees of Martin Institute as a corporation, they were estopped to deny its existence as such; and that since it must be as to them treated

as a corporation, it should be made a party. Upon his so ruling and giving plaintiffs time to amend by making the corporation a party, and their failure so to do, he entered an order dismissing the action on that ground.

It is seen from the foregoing statement that many questions are raised as touching the corporate character of the Trustees of Martin Institute, such as whether it became in fact and in law a corporation; if so, the length of its corporate life, whether its charter expired by operation of law, and, if so, when; whether or not, because its trustees, officers, and agents continued to act, it was a de facto corporation; and collateral questions upon which these are dependent. But, under the view we entertain after a careful study of the whole case, only one question needs to be or could with propriety be determined. Our inquiry will thus be limited as was that of the trial judge.

It is generally accepted as a settled principle that persons who deal and contract "with a corporation in its corporate name and character" are estopped to deny the corporate character of such association, organization, or group of persons so styling themselves and so doing business, if such purported corporate body claim their corporate right under some color of law or appropriate authority for their corporate existence. 3 Thompson on Corporations (3d ed.), 689, § 2063; 8 Fletcher's Cyc. Cor. § 3910; 14 C. J. 227, § 235; 18 C. J. S. 504, § 109; 13 Am. Jur. 206, § 63. This principle of law, together with the cognate principles, may be found in our Code Annotated, § 22-714, which declares: "The existence of a corporation, claiming a charter under color of law, can not be collaterally attacked by persons who have dealt with it as a corporation. Such persons are estopped from denying its corporate existence." It was stated by Mr. Justice Cobb in *Brown* v. *Atlanta Railway & Power Co.,* 113 *Ga.* 462, 467 (39 S. E. 71) : "Corporations, using that term to designate organizations merely claiming or alleged to be corporations as well as those which are in all respects legally constituted, have been divided into three classes, corporations de jure, corporations de facto, and corporations by estoppel. Corporations de jure have been defined to be those whose legal right to exist can not be questioned even by the State itself. The expression 'de facto corporations' is generally used to denote associations exercising corporate powers under color of a more or

less legal organization. One who has contracted with a corporation as such is estopped to deny its existence as a corporation at the date of the contract, in any suit arising thereunder, and such a corporation has been, it seems to us with great propriety, designated a corporation by estoppel. See Notes of John Lewis, Esq., to Vanneman v. Young, 3 Am. R. & Cor. Cas. 662 (52 N. J. L. 403), and authorities there cited." In *Planters' & Miners' Bank* v. *Padgett,* 69 *Ga.* 159, 164, it was held: "If one dealt with a company as a corporation and received notes from it as such, he could not afterwards, in seeking to enforce the contract, deny the corporate existence." In the opinion it was stated: "If the bank so dealt with the corporation, its corporate existence can not be denied by it after the execution of the contract. Morawetz on Private Cor. par. 142; 11 Cushing, 285; 27 Ohio St. 343, and other cases there cited. In this case, not only were the promissory notes signed by the president and treasurer of the company, but a mortgage was executed to secure them; . . so that it dealt with the company and recognized it as a de facto corporation in many phases of the transaction, and it can not now deny its existence as a legal entity. Having contracted with the company as a corporation, through its officer or agent, both parties believing the corporation to exist de jure as well as de facto" to hold otherwise would be "to make a new contract for the parties, never contemplated when the real contract which they made themselves was executed." In *Imboden* v. *Etowah &c. Mining Co.,* 70 *Ga.* 86, it was held: "Where one corporation has dealt with another company as a corporation, has negotiated with it concerning the waters flowing in a certain ditch, obtained permission from it to use those waters, and used them for years thereunder, dealing with the presidents, superintendents, attorneys and managers of the second company as officers and agents of a corporation, in a subsequent controversy growing out of the subject-matter of such recognition, the first corporation is estopped from denying the existence of the second." In the opinion Chief Justice Jackson stated: "This court, as indeed all civilized courts, has ruled that such recognition of a being—even of an artificial being—will stop the mouth of any other being, natural or artificial, from denying, in a case growing out of such recognition, that the being thus recognized ever had being. *Planters' and Miners' Bank* v. *Padgett,* 69 *Ga.* 159; *Geor-*

gia Ice Co. v. Porter & Meakin [70 Ga. 637]." See also Petty v. Brunswick & Western Railway Co., 109 Ga. 666 (3) 674 (35 S. E. 82), where it is pointed out that in such a situation the principle is alike applicable to both parties to such contract. Orr v. McLeay, 6 Ga. App. 417 (2) (65 S. E. 164); Rogers v. McKinley, 52 Ga. App. 161 (2) (182 S. E. 805); West v. Flynn Realty Co., 53 Ga. App. 594 (186 S. E. 753); Georgia Southern & Florida Railroad Co. v. Mercantile Trust & Deposit Co., 94 Ga. 306 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153).

While it is to be remembered that no decision is here being made on the question whether the charter of this corporation had expired, or upon the more precise question as to whether it bore the character of a de facto corporation in the strictly technical sense, it is perhaps not amiss to observe, in reference to the contention by the plaintiffs to the effect that there was no way to maintain a suit "against a dead corporation," and no means of serving process upon it, that this was undoubtedly the law with reference to a corporation the charter of which had expired before the passage of the act of 1918 (Ga. Laws 1918, p. 137; Code Ann. §§ 22-1210, 22-1211), which has to some extent been superseded by the provisions of the corporation act of 1938 (Ga. L. Ex. Sess. 1937-38, p. 214). See Venable v. Southern Granite Co., 135 Ga. 508 (69 S. E. 822, 32 L. R. A. (N. S.) 446). In Huey v. National Bank of Fitzgerald, 177 Ga. 64, 70 (169 S. E. 491), it was pointed out that "it is not now the law that a corporation is deprived of all semblance of legality merely by the expiration of its charter;" and the doctrine of estoppel as announced in the cases set forth above was reaffirmed, with other citations. Sustaining this general rule as to estoppel, and resting upon the same principle, are the cases of Brooke v. Day, 129 Ga. 694, 696 (59 S. E. 769); Council v. Brown, 151 Ga. 564, 568 (107 S. E. 867). Other instances where the doctrine of estoppel as applied to persons, either stockholders of or persons doing business with corporations, are found in Torras v. Raeburn, 108 Ga. 345 (2) (33 S. E. 989); Georgia Ice Co. v. Porter, supra. What would seem to be an extreme statement of the rule as here applied, and one much stronger than is required to support the holding here made, is found in Rogers v. Toccoa Power Co., 161 Ga. 524 (131 S. E. 517, 44 A. L. R. 534), as follows: "Estoppel may prevail where there is no color of incorpora-

tion, or where the law under which the corporation claims to exist is unconstitutional or otherwise invalid;" citing *Brown* v. *Atlanta Railway & Power Co.,* 113 *Ga.* 462 (supra), and Hughes *v.* Farmers Union Produce Co., 110 Neb. 736 (194 N. W. 872, 37 A. L. R. 1314).

While there is much discussion running through practically all the cases and texts cited above, and many others which we have investigated, as touching the numerous artificial lines which define a de facto corporation, we repeat that as to the plaintiffs in the present action this distinction would seem to be unimportant, because, although it was stated by Mr. Justice Gilbert in *Rogers* v. *Toccoa Power Co.,* supra, that "The doctrine of de facto corporations has nothing to do with the principle of estoppel," if the plaintiffs, as would seem to be true from what has already been said, are estopped to question the corporate existence of Trustees of Martin Institute, then the special category in which the purported corporation should be placed need not be determined. We make this statement because in many of the cases where the precise question before us was not under consideration, much of the discussion rages over efforts to make this close distinction which seems here to be unnecessary. There is considerable diversity of opinion on this question. See 14 C. J. 213, § 223; 7 R. C. L. 60, § 42; 1 Thompson on Corporations (3d ed.), 299, § 248.

It is insisted that the principles set forth above, even when otherwise applicable, do not apply to a municipal corporation or other public bodies such as boards of education. "The doctrine of estoppel is not applied as freely against a municipal corporation as against an individual. Municipalities act in both a governmental and a proprietary capacity, and an estoppel is not asserted if such will embarrass a municipality in its capacity as a governing body or operate to prevent it from exercising its police power. . . While a municipality is not estopped to deny the validity of a contract wholly beyond its powers, it may be estopped by the exercise of contractual powers legally vested in it, and even by the exercise of governmental powers, to prevent manifest injustice and wrongs to private persons, where the restraint placed upon a municipality to accomplish that purpose does not interfere with the exercise of governmental powers of the municipality. A municipality is subject to the rules of estoppel in those cases wherein equity and justice require their application, and may be estopped under certain

**356**

circumstances by its act and conduct." 19 Am. Jur. 820, § 168; 33 Am. Jur. 374, § 668; State ex rel. *v.* Missouri Utilities Co., 331 Mo. 337 (50 S. W. 2d, 394, 89 A. L. R. 607); State ex inf. Mc-Kittrick *v.* Missouri Utilities Co., 339 Mo. 385 (96 S. W. 2d, 607, 106 A. L. R. 1169, 1183). "A municipal corporation may be estopped to deny the corporate existence of an alleged private corporation. For instance, the levy and collection of taxes against a corporation, as such, estops a municipality from denying its corporate existence in an action to recover back the taxes paid." 8 Fletcher's Cyc. Cor. 219, § 3893. For other illustrations see p. 266, § 3921, of the same volume; 18 C. J. S. 520, § 117; 3 Mc-Quillin on Municipal Corporations, 2734, § 1256; Illinois Trust & Savings Bank *v.* Arkansas City, 76 Fed. 271, 282 (34 L. R. A. 518); Westbrook *v.* Middlecoff, 99 Ill. App. 327. "The principles of right and justice upon which the doctrine of estoppel in pais rests are applicable to municipal corporations." Beadles *v.* Smyser, 209 U. S. 393 (28 Sup. Ct. 522, 52 L. ed. 849). In *Citizens Bank of Moultrie* v. *Rockdale County,* 152 *Ga.* 711 (8) (111 S. E. 434), after first declaring the general rule as provided in the Code, § 89-903 that the public can not be estopped by the acts of officers done in the exercise of powers not conferred, this court held: "But the public will be estopped by the acts of any public officer done in the exercise of a power which is expressly conferred by law." See *City of Hogansville* v. *Farrell Heating & Plumbing Co.,* 161 *Ga.* 780, 792 (132 S. E. 436). That a municipality when acting in its "private or proprietary capacity" in its contractual relations may be subject to estoppel was clearly held in *City of East Point* v. *Upchurch Packing Co.,* 58 *Ga. App.* 829 (200 S. E. 210), where a full discussion of the question as thus limited may be found. In *Mayor &c. of Athens* v. *Georgia Railroad,* 72 *Ga.* 800, estoppel was successfully invoked against the municipality respecting the effect of an ordinance, just as in reference to matters of contract it would generally be applied as against an individual or other artificial person. In the case before us, the City of Jefferson, through its Board of Education (*City of Hogansville* v. *Farrell Heating &c. Co.,* supra) on several occasions, and jointly with it the Board of Education of Jackson County on at least two occasions, entered into lease agreements with the Trustees of Martin Institute, which acted as a corporate entity through its presi-

dent and secretary, and, as appears from the record, professed to act under some color of legal authority. No claim to the contrary is made. The City of Jefferson, through its Board of Education, in so contracting, acted within the terms of a special grant of power from the legislature (Ga. L. 1912, p. 1019), although we make no decision on the question whether this charter amendment was necessary to authorize such a lease agreement. See *City of Hogansville* v. *Farrell Heating & Plumbing Co.*, supra. So under the principles herein dealt with we conclude, as did the trial judge, that at least as to the plaintiffs in their contractual relations, out of which the present action arises, the Trustees of Martin Institute must be treated as a corporation. This, of course, means that plaintiffs' controversy is with such corporation, and not with the individuals who are the defendants. The corporation not having been made a party, the action was properly dismissed.

*Judgment affirmed. All the Justices concur.*