## 18909. COBB COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION *v.* BOARD OF LIGHTS & WATER WORKS OF MARIETTA.

ARGUED MARCH 14, 1955—DECIDED APRIL 11, 1955.

*Robert D. Tisinger, D. M. Pollock, J. G. Roberts,* for plaintiff in error.

*Scott S. Edwards, Jr., Sam J. Welsch,* contra.

PER CURIAM. (After stating the foregoing facts.) 1. The Rural Electrification Act of 1936 was passed by Congress and approved by the President for the beneficent purpose of making electric energy available to persons in rural areas who were not receiving central station service. 7 U. S. C. A. § 902. The act created and established in the Department of Agriculture an agency of the United States known as the "Rural Electrification Administration," the powers of which are exercised by an Administrator, under the general direction and supervision of the Secretary of Agriculture. 7 U. S. C. A. § 901. Co-operative, nonprofit, electric membership corporations organized under the laws of any State or Territory of the United States are among those to whom the Administrator of the Act may make loans for the purpose of financing the construction and operation of self-liquidating electric systems furnishing current to persons in rural areas; but such loans can be made only when the Administrator finds and certifies that in his judgment the security therefor is reasonably adequate and such loan will be repaid within the time agreed. 7 U. S. C. A. §§ 904, 905. To implement the Rural Electrification Act in Georgia, the Electric Membership Corporation Act was enacted by the legislature in 1937 (Ga. L. 1937, p. 644). This act provides for the incorporation of co-op-

erative, nonprofit, membership corporations with corporate power to engage in rural electrification in any area not included within the boundaries of any incorporated or unincorporated city, town, or village having a population in excess of 1,500 inhabitants, and which is not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation. To encourage and foster the creation and operation of such membership corporations, and in connection with the acquisition, construction, improvement, operation, and maintenance of their lines, the legislature by section 4 of the Rural Electrification Act of 1937 gave them the right to use any highway, or any right-of-way, easement, or other similar property right owned or held by the State or any political subdivision thereof, subject only to reasonable regulations as to safety which the State Highway Department promulgates. And the people of Georgia, by article 7, section 1, paragraph 4, of the Constitution of 1945, have, until December 31, 1961, exempted from all taxation the real and personal property which such corporations own and use for the purpose of furnishing electric current to the members they serve.

■ The plaintiff, a nonprofit membership corporation, seeks an injunction to prohibit the defendant, a subsidiary corporation to the City of Marietta, Georgia, from invading a rural area in which it is furnishing electric energy and from interfering with its operations and duplicating its electric service. It bases its right to that relief on equitable estoppel or estoppel in pais; but, in the circumstances of this case, we are of the opinion that its position is untenable. Estoppels are not favored by our law. *Parker* v. *Crosby*, 150 *Ga.* 1, 5 (102 S. E. 446). "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." Code § 38-116. This section was codified from the ruling in *Wilkins* v. *McGehee*, 86 *Ga.* 764, 770 (13 S. E. 84). In equitable estoppel there must concur, "first, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person

affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and fifth, persons complaining shall have been induced to act by reason of such conduct of the other." *Tinsley* v. *Rice*, 105 *Ga*. 285, 290 (31 S. E. 174). See also *Hancock* v. *King*, 133 *Ga*. 734 (66 S. E. 949); *Bennett* v. *Davis*, 201 *Ga*. 58 (39 S. E. 2d 3); 19 Am. Jur. 642, § 42. We are here dealing with two corporations which have clear legislative authority to supply the residents of this rural area with electric energy, and it is not contended, nor could it be, that either has an exclusive right to do so; and, since their creator did not see fit to prohibit one from competing fairly with the other, it is elementary that the courts are unauthorized to do so. The petition alleges that the defendant has by declaration and by conduct estopped itself to do the act complained of. For an estopping declaration the plaintiff relies on that provision contained in a written contract between the parties whereby the defendant, in October, 1952, stated that it had no present intention of extending its electric lines into any adjacent area occupied or supplied with electricity by the plaintiff. This was no declaration by the defendant as to the future, and the plaintiff could not rely on it for any assurance that the defendant would not later exercise its corporate power to furnish electric energy to any rural area in Cobb County. As to future operations, the plaintiff was certainly not deceptively misled and induced to act injuriously to itself by this declaration of the defendant. For estopping conduct, the plaintiff relies on the defendant's refusal in 1952 to furnish this area with electric energy when requested to do so. Respecting this, the petition alleges: that certain residents of the area first asked the defendant to furnish them electric service, and the defendant declined to grant their request, saying that it could not and would not do so; that the same parties then asked the plaintiff to furnish them such service; that the plaintiff, in order to grant and comply with their request, applied to the Rural Electrification Administration for an additional loan, obtained it, and from the proceeds thereof spent approximately $179,000 in the construction of a modern electric distribution system in the area, which is amply sufficient to supply all of its needed electric requirements, presently and

in the future; and that the plaintiff conveyed all of its properties to the Rural Electrification Administration as security for the repayment of the loan, and for its ability to repay the loan is wholly dependent upon the revenue it receives from an operation of its facilities. This, as we construe it, amounts to no more than a statement by the defendant to the applicants that it could not and would not at that time furnish them electric service; and it is not alleged in the petition that this action was taken for the deceptive purpose of misleading the plaintiff or for the wrongful purpose of inducing the plaintiff to act in the premises as it allegedly did. In this connection, see *Dingfelder* v. *Georgia Peach Growers Exchange*, 182 *Ga.* 521 (186 S. E. 425), and citations. Before an equitable estoppel will arise, the party asserting it must have relied and acted upon the declarations or conduct of the party sought to be estopped and not on his own knowledge or judgment. *Brice* v. *Sheffield*, 121 *Ga.* 216 (48 S. E. 925); *Peacock* v. *Horne*, 159 *Ga.* 707 (126 S. E. 813), and citations. As we view the petition, it alleges no declaration or conduct on the part of the defendant which would estop it from doing the act complained of; but it clearly shows that the plaintiff in constructing its electric system acted upon its own judgment and with knowledge of the defendant's corporate authority to furnish the residents of the same area with electric energy at any time it elected to do so. This is not a case where the defendant seeks to prevent the plaintiff from exercising a corporate power which it unquestionably has; but it is one where the plaintiff seeks to prevent the defendant from engaging in a competitive electric business with it. Therefore, *City of Summerville* v. *Georgia Power Co.*, 205 *Ga.* 843 (55 S. E. 2d 540), and cases like it, which are cited and relied on in the brief for the plaintiff in error, are not in point and are clearly distinguishable. Since the allegations of the petition are insufficient to show equitable estoppel, it was properly dismissed on a general demurrer, which questioned its sufficiency to state a cause of action for the relief sought. Hence the judgment complained of is not erroneous.

*Judgment affirmed. All the Justices concur, except Wyatt, P. J., and Candler, J., who dissent.*

CANDLER, Justice, and WYATT, Presiding Justice, dissenting.

We cannot agree with the majority opinion in this case. The plaintiff, a nonprofit membership corporation, seeks an injunction to prohibit the defendant, a subsidiary corporation to the City of Marietta, Georgia, from invading a rural area in which it is furnishing electric energy, and from interfering with its operations and duplicating its electric service. It bases its right to that relief on equitable estoppel or estoppel in pais; and, in the circumstances of this case, we are of the opinion that its position is tenable. An equitable estoppel, when established, operates as effectively as estoppels by deed or record. It cannot, however, in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, or be limited by a technical formula, but it is entitled to a fair and liberal application like other equitable doctrines that are admitted to suppress fraud and promote honesty and fair dealing. 31 C. J. S. 436, § 148. The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as in equity and good conscience, he would have them do unto him; if their positions were reversed. Its compulsion is one of fair play. Boddie *v.* Bond, 154 N. C. 359 (70 S. E. 824); McNeely *v.* Walters, 211 N. C. 112 (189 S. E. 114); 10 R. C. L. 688, § 19. In a plea of equitable estoppel, two things must be clearly alleged: (1) an act of one party that would estop him; and (2) the other party has been misled by it and has acted to his injury. 19 Am. Jur. 640, § 42; *Hancock* v. *King,* 133 *Ga.* 734 (2) (66 S. E. 949); Fordson Coal Co. *v.* Garrard, 277 Ky. 218 (125 S. W. 2d 977, 121 A. L. R. 841). Equitable estoppel arises when the party asserting it has relied and acted upon the acts, conduct, or declarations of the party sought to be estopped. *Peacock* v. *Horne,* 159 *Ga.* 707 (126 S. E. 813). The operation of a public utility by a municipal corporation is a non-governmental function or proprietary business. *Lawson* v. *City of Moultrie,* 194 *Ga.* 699 (22 S. E. 2d 592); *City of East Point* v. *Upchurch Packing Co.,* 58 *Ga. App.* 829 (200 S. E. 210), and citations. As to acts and conduct respecting its proprietary or private powers, equitable estoppel may be applied to a municipality just as it can be to a private corporation. *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 106; *Mayor &c. of*

*Athens* v. *Georgia Railroad*, 72 *Ga.* 800; *City of Jefferson* v. *Holder*, 195 *Ga.* 346 (24 S. E. 2d 187); *City of Summerville* v. *Georgia Power Co.*, 205 *Ga.* 843 (2) (55 S. E. 2d 540); Beadles *v.* Smyser, 209 U. S. 393 (28 Sup. Ct. 522, 52 L. ed. 849); 21 C. J. 1190, § 193. In *City of Atlanta* v. *Gate City Gas Light Co.*, supra, it was said: "Upon every principle of equity this failure to notify the complainant of their intention [not to allow the gas company to lay its pipe along their streets] until this heavy expenditure had been made, would estop them. Such conduct is fraudulent in the eye of the law, and where practiced upon an innocent party, who is seeking bona fide to carry out the provisions of its charter by availing itself of the powers and privileges thereby granted, would, if anything could, debar them from now being heard." In 21 C. J. 1186, 1187, § 190, it is stated: "An equitable estoppel may be invoked against the United States, a State, a municipal corporation, or other governmental agency or instrumentality in respect of acts done in its so-called governmental or public capacity in the strict scope of which it cannot be estopped; and a failure to observe this distinction, or to recognize and point out the absence of one or more of the essential elements of a perfect estoppel, may be the reason for decisions and dicta which apparently deny this applicability of the doctrine of equitable estoppel, especially as against a State or the United States, for in some cases, it seems, the doctrine is less liberally applied against the United States or a State than it is against a municipal corporation." It has been stated and held that the doctrine of estoppel may be invoked against a municipality where there have been positive acts by municipal officers inducing action by the other party, and where it would be inequitable to permit the municipality to stultify itself by retracting what its officers have done. 51 C. J. S. 418, § 142 (a); *City of Summerville* v. *Ga. Power Co.*, supra; Trustees of Schools *v.* Village of Cahokia, 357 Ill. 538 (192 N. E. 565); People el rel. Petty *v.* Thomas, 361 Ill. 448 (198 N. E. 363). But inaction may supply the element of representation necessary to constitute an estoppel as against a municipality where, in addition to lapse of time, circumstances appear, rendering it contrary to right and justice for the public to exercise a particular proprietary or private power. 31 C. J. S. 409, § 138;

State *v.* Missouri Utilities Co., 339 Mo. 385 (96 S. W. 2d 607, 106 A. L. R. 1169); City of Chetopa *v.* Board of County Commissioners, 156 Kan. 290 (133 Pac. 2d 174).

Applying the above principles to the allegations of the petition, which are treated as true in dealing with the demurrer, it is our opinion that the petition shows equitable estoppel or estoppel in pais; and this being true, the trial judge erred in sustaining the defendant's general demurrer and in dismissing the petition.