**AETNA INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**GLENS FALLS INSURANCE COMPA-**
**NY, South Carolina Insurance Com-**
pany, Defendants-Appellants,

The London Agency, Inc., et al.,
Defendants-Appellees.

No. 71–1736.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1972.

Rehearing Denied Feb. 16, 1972.

Hugh M. Dorsey, Jr., Gary W. Hatch, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for South Carolina Ins. Co.

C. B. Rogers, Powell, Goldstein, Frazer & Murphy, Paul W. Stivers, Atlanta, Ga., for Glens Falls Ins. Co.

George B. Haley, Jr., Emmet J. Bondurant, Atlanta, Ga., for London Agency and others; Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.

Sam F. Lowe, Jr., Robert W. Beynart, Atlanta, Ga., Bruce W. Manternach, Hartford, Conn., for Aetna Ins. Co.; Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., of counsel.

Before TUTTLE, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

This appeal involves the existence *vel non* of an agency relationship between two reinsurers and an employee of the reinsured. The district court found that the employee was an agent of the reinsurers, 327 F.Supp. 11. We disagree and reverse.

On March 3, 1966, a tornado destroyed a television tower in Mississippi. The damage claim, in excess of $375,000, was paid by Aetna Insurance Company for which it was liable under a policy insuring the tower as an inland marine risk. Aetna in turn attempted to recover the portion of the claim that it had reinsured with the South Carolina Insurance Company and the Glens Falls Insurance Company. Under reinsurance treaties Aetna had ceded 30% of this risk to South Carolina and 20% to Glens Falls.

South Carolina and Glens Falls refused to reimburse Aetna on the grounds that the treaties excluded uncontrolled inland marine risks. The reinsurance on this television tower was erroneously ceded to the reinsurers as a fire risk.

The central issue in this appeal involves the relationship between Palmer, the underwriter who made the decision to cede the reinsurance, and South Carolina and Glens Falls. Palmer admitted that he made a mistake in ceding this risk to the reinsurers because he knew that their treaties excluded uncontrolled inland marine risks. The appellees, Aetna, the London Agency, and Kinnett-Edwards-Boyd, Ltd., argue, and the district court held, that at the time Palmer ceded this risk he was acting as the agent for the reinsurers and not for any of the appellees; hence, the reinsurers were adjudged liable to Aetna.

In order to properly evaluate Palmer's role in this matter, it is necessary to review some of the history and past transactions of all the parties involved. In 1958 South Carolina executed a reinsurance treaty with the A. H. Turner, Ltd. Agency, which in 1960 became the Kinnett-Edwards-Boyd, Ltd. Agency (KEB). The individual and limited partners of KEB were also the sole stockholders in the London Agency, a corporation formed to handle surplus business lines with specialized types of coverage. Under the treaty KEB acted as a general agent for the reinsured company in placing reinsurance business for them.

Sometime during the summer or fall of 1963 Aetna purchased all of KEB's insurance business and assets. Aetna officially took over the business on Jan-

uary 2, 1964 and bound itself to continue the KEB business for a period of at least three years. In the latter part of 1963 the treaty with South Carolina was amended to reflect this by the addition of the London Agency as a party, i. e., "Kinnett-Edwards-Boyd, Ltd. and/or the London Agency, Inc.," in order that the reinsurance might be processed through London. London's role was to be purely clerical and all of the reinsurance to be ceded under the treaty was to be that of either companies formerly represented by KEB as general agent or Aetna.

Glens Falls entered into a similar treaty with KEB and/or London on January 3, 1964. Even though Aetna was now the owner of the KEB agency its name was not included in the treaty as a party because it was contemplated that reinsurance from companies formerly represented by KEB as general agent would also be ceded to Glens Falls in addition to Aetna reinsurance. London was not to place any of its own business under the treaty but was merely to perform a clerical function in processing the paperwork in order to save Aetna the expense.

South Carolina and Glens Falls designated the particular types of risks they were willing to reinsure and those they excluded in the treaty. One of the exclusions was uncontrolled inland marine policies. Under the treaty Aetna or KEB/London was not obligated to cede any reinsurance and the reinsurers could decline or cancel reinsurance ceded after giving ten days notice in writing. The reinsurers received notification of reinsurance ceded them by means of a monthly IBM bordereaux sheet. In the normal course of business the reinsurers became liable the moment any reinsurance was ceded to them within the limits set forth in the treaty.

The decision to cede the reinsurance to a particular reinsurer was made by Palmer, the chief underwriter. He held this position with the KEB agency and when Aetna bought KEB he became the head of the underwriting section for the southeastern division of Aetna. He continued to be responsible for ceding reinsurance and was functioning in this capacity when he ceded the reinsurance to South Carolina and Glens Falls.

South Carolina was of course aware that Palmer had been making these reinsurance decisions affecting them and were satisfied with his performance. When Aetna took over KEB South Carolina was pleased to know that Palmer would continue in this capacity. It also appears from the record that Glens Falls knew Palmer made these decisions and had no objections.

On August 4, 1964, Palmer received a teletype sent by the Aetna home office instructing him to cede eighty per cent of the policy Aetna had assumed on the Mississippi television tower as an inland marine risk. After requesting and receiving further information on the tower he proposed to cede 30% to South Carolina and 20% to Glens Falls.[1] Palmer acknowledged that he knew of the inland marine risk limitations in the treaties but that it slipped his mind at the time he made the decisions to cede. He admitted that he should have either declined to place this reinsurance with South Carolina and Glens Falls or at least have notified them of the type of risk involved.

Upon receiving Palmer's choices for the reinsurance the Aetna home office sent final authority to Palmer to cede this reinsurance on forms called insurance headers. These headers erroneously identified the television tower coverage as a fire risk. Palmer had the headers sent to the London office, which transferred the information to the IBM bordereaux which served the function of notifying the reinsurers that the risks had been ceded to them. South Carolina and Glens Falls were then under the impression that they were reinsuring a fire risk which was covered in their treaties.

---

1. 30% was also ceded to another reinsurer who paid its portion of the loss.

In October 1964, the television tower sustained some minor damage from Hurricane Hilda. Aetna paid this claim and notified South Carolina and Glens Falls that they were liable for $900 and $600 respectively. The notifications contained coded policy numbers which included the letters "IM," which to the industry are the initials for inland marine. Nevertheless, both reinsurers paid their portions of this claim without protest.

In March 1965 the television tower was completely destroyed by a tornado. Aetna paid the claim and in turn demanded the appropriate reimbursement from the reinsurers. South Carolina and Glens Falls refused to pay on the ground that the coverage was for an uncontrolled inland marine risk[2] for which they were not liable under their treaties.

The trial court found that both reinsurers had authorized Palmer to act for them and that he was acting for them and not for Aetna or KEB when he mistakenly accepted this reinsurance on their behalf. Therefore, South Carolina and Glens Falls were bound by Palmer's mistakes and were liable to Aetna for their share of the loss.

■ This case, as tried and argued, turns upon who Palmer was acting for when the reinsurance was ceded to South Carolina and Glens Falls. There is not the slightest doubt that Palmer was acting for his employer Aetna, and not for South Carolina or Glens Falls when he ceded the reinsurance. While there is testimony to the effect that Palmer acted for the reinsurers and that they authorized him to act in accepting reinsurance for them, an agency is not proved by the assertion of witness that a person is or is not an agent. Warnock v. Elliott, 1957, 96 Ga.App. 778, 101 S. E.2d 591, 599. The existence *vel non* of an agency must be determined from all the facts and circumstances. *See* Crowe v. Hertz Corporation, 5 Cir. 1967, 382

F.2d 681, 687–688. Although it is strenuously argued by the appellees that the reinsurers authorized or chose Palmer to act for them, the record is clear that they were merely acknowledging the fact that they knew that Palmer was doing the underwriting for KEB and Aetna and that they were satisfied with the arrangement and his performance. At no time did they appoint or designate him as their underwriter nor were the treaties conditioned upon his functioning in that capacity.

The district court's analysis of the transaction portrayed Palmer as wearing two hats at the same time, i. e., as acting for the reinsured in ceding the reinsurance and at the same time acting for the reinsurers in accepting the reinsurance. This misconstrues the nature of the reinsurance relationship between the reinsured and the reinsurers. The reinsurance treaties, and not Palmer, bound the reinsurers to accept any reinsurance ceded pursuant to the provisions specified in the treaty. *See* Appleman, Insurance Law and Practice § 7681 (1943). Palmer was not authorized to "accept" reinsurance for South Carolina and Glens Falls. Palmer's function was to choose the reinsurers for the risk to be ceded.

■ Under Georgia law, which is controlling in this diversity case, no agency relationship existed between Palmer and the reinsurers. The relation arises when one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another done in his behalf. Ga. Code Ann. § 4–101. South Carolina's and Glens Falls' recognition of and satisfaction with Palmer as Aetna's underwriter cannot be construed as an authorization to act.

In addition, Georgia courts have approved the restatement definition of agency. "Agency is the relationship which results from the manifestation of

2. The trial court found that the coverage here was an inland marine risk but that the policy for this television tower could also have been written as a fire and extended coverage risk. We do not dispute this finding; however, we deem it irrelevant in the light of the stipulation that the risk insured was an uncontrolled inland marine risk.

consent by one person to another that the other shall act on his behalf and *subject to his control,* and consent by the other so to act." (emphasis added) *See* Restatement (Second) of Agency § 1 (1958); Smith v. Merck, 1950, 206 Ga. 361, 57 S.E.2d 326, 332; Washington National Ins. Co. v. Mayor, 1943, 196 Ga. 126, 26 S.E.2d 359, 361. The element of control, necessary to the agency relationship, is absent here. The reinsurers had no right to regulate Palmer's conduct. His death, retirement or replacement would not have affected their obligation to accept reinsurance ceded them under the treaties. They were liable for reinsurance ceded if it was within the treaty provisions regardless of who served as the underwriter.

■■■■ The district court also buttressed its conclusions on the theory of ratification and estoppel. This finding appears to be based on the fact that the reinsurers had actually paid damage claims on the television tower and that the policy number on such claims included the letters "IM" which should have alerted the reinsurers that this was an inland marine policy. While this neglect or oversight on the part of the reinsurers may be a ratification for those particular transactions,[3] it does not have the effect of estopping the reinsurers from denying coverage under the terms of their treaties. Estoppel is an equitable doctrine. One of the requirements for its application is that the party seeking to invoke it shall have relied upon the representation and been misled thereby. Cobb County Rural Electric Membership Corp. v. Board of Lights and Water Works of Marietta, 1955, 211 Ga. 535, 87 S.E.2d 80, 83. The record discloses no reliance upon the Hurricane Hilda claims by Aetna. The payment of these claims had no significance to Aet-

na for the policy was again listed as a fire risk on the IBM bordereaux that the reinsurers received after the claims were paid. Moreover, mere general carelessness on the party claimed to be estopped is usually not a sufficient basis on which to apply the doctrine. 28 Am. Jur.2d, Estoppel and Waiver §. 61 (1966).

It was Palmer's mistake along with the error of Aetna's home office in returning the insurance headers labeling the policy as a fire and extended coverage risk that caused the reinsurance to be improperly ceded to South Carolina and Glens Falls. Consequently, the liability flowing from these acts cannot be visited upon South Carolina or Glens Falls.

The judgment of the district court is reversed and the cause is remanded with directions to enter judgment not inconsistent with this opinion.

Reversed and remanded.

---

3. It is not necessary to the resolution of this appeal that we determine whether the payment of these claims ratified those transactions. Indeed, this inquiry touches directly upon the validity of the counterclaims of South Carolina and Glens Falls which we do not decide because they

were not argued either orally or in the briefs by either appellants or appellees. Fed.R.App.P. 28; Aetna Casualty and Surety Co. v. United States, 5 Cir. 1970, 435 F.2d 1082, 1084; Southern Rambler Sales, Inc. v. American Motors Corp., 5 Cir. 1967, 375 F.2d 932, 934.